HENRY TABE, Plaintiff-Appellee, v. JAMES AUSMAN *et al.*, Defendants-Appellants.

First District (1st Division)   No. 1—07—0703

Opinion filed February 9, 2009.

Hugh C. Griffin, of Hall Prangle & Schoonveld, LLC, and Robert M. Collins, of Bollinger, Ruberry & Garvey, both of Chicago, for appellants.

Michael W. Rathsack and Scott B. Wolfman, both of Chicago, for appellee.

JUSTICE GARCIA delivered the opinion of the court:

In this medical malpractice case, the defendants, James Ausman, M.D., Ben Roitberg, M.D., and Tamin Hersonkey, M.D., appeal the order of the circuit court granting Henry Tabe a new trial, pursuant to Illinois Supreme Court Rule 306(a)(1) (210 Ill. 2d R. 306(a)(1)). The defendants contend the circuit court erred in granting a new trial

because there was sufficient evidence to support the sole proximate cause instruction given to the jury and the "two-issue" rule, recognized in *Strino v. Premier Healthcare Associates*, 365 Ill. App. 3d 895, 850 N.E.2d 221 (2006), precludes review of the jury's verdict in favor of the defendants where no special interrogatories were given to the jury. Because we agree with each of the defendants' contentions, we reverse and remand with directions that the jury's verdict be reinstated.

## BACKGROUND

On June 23, 2000, the defendants performed a laminectomy procedure on the plaintiff. The laminectomy involved placing a fat graft into the plaintiff's spinal area to alleviate his chronic back pain. The procedure did not have the desired outcome, leaving the plaintiff with motor and sensory deficits.

The plaintiff sued the three surgeons who performed this procedure at the University of Illinois Hospital in Chicago: Dr. Ausman, a neurosurgeon; Dr. Roitberg, chief hospital resident at the time of the surgery; and Dr. Hersonkey, a second-year resident at the time of the surgery. The trial centered on the plaintiff's claim that the defendant doctors negligently failed to perform a timely decompression procedure to preserve the plaintiff's spinal nerves and avoid other undesired results.

The jury trial lasted nine days. During the trial, extensive medical testimony from eight different physicians was presented, including testimony from each of the defendants. The plaintiff called three experts to testify: Dr. Robert Fink, a neurosurgeon; Dr. Sheldon Jordan, a neurologist; and Dr. Joel Meyer, a neuroradiologist. The defendants called one expert to testify, Dr. Dennis Maiman, a neurosurgeon who had performed more than 1,000 laminectomy procedures.

Dr. Ausman testified that in 1994 he successfully performed a laminectomy on the plaintiff and did not see him again until 2000, when he performed a second laminectomy, the one at issue here. After the procedure in 2000, the plaintiff began to experience numbness in his feet, back pain, diminished strength in his left leg and improper bladder function. Dr. Ausman testified an MRI was ordered to rule out *cauda equina* compression (nerve compression) as the cause of the plaintiff's symptoms. Dr. Ausman admitted that if the plaintiff's symptoms were caused by nerve compression, decompression surgery was necessary. An MRI was performed on the plaintiff a few days after the laminectomy. Dr. Ausman testified he does not specialize in reading MRI films and he often consults with a radiologist or neuroradiologist to review the MRI films. In his testimony, Dr. Ausman does not

make clear whether he actually relied on the neuroradiologist's reading of the MRI films in this case, but it is clear that he met with the neuroradiologist to discuss the plaintiff's case, although the date of the meeting is unclear. The neuroradiologist that read the plaintiff's MRI films noted an encroachment of the plaintiff's spinal canal in his report. The author of the report was never identified beyond being a neuroradiologist at the University of Illinois Hospital.[1] Dr. Ausman also reviewed the MRI films and concluded the encroachment shown on the MRI films was not a compression. Dr. Ausman explained that he, and Drs. Roitberg and Hersonkey, found no evidence on the MRI films to explain the plaintiff's postsurgical symptoms. Dr. Ausman opined that the plaintiff's symptoms were the result of normal inflammation and swelling following such a procedure, congenital narrowing of the plaintiff's spinal canal, scarring and weakness from his previous surgery, injuries from a recent car accident, and his diabetic condition. Dr. Ausman testified the fat graft did not contribute to the plaintiff's symptoms.

Drs. Roitberg and Hersonkey testified that they along with Dr. Ausman, with the neuroradiologist, acted as a "team" in determining the plaintiff's treatment plan, but that the ultimate responsibility for the patient's care lay with Dr. Ausman. Neither Dr. Roitberg nor Dr. Hersonkey thought the MRI films of the plaintiff showed signs of nerve compression.

The defendants testified the neuroradiologist conferred with them regarding his opinion before they concluded there was no nerve compression and, therefore, no reason to justify further surgeries, such as a decompression procedure. The neuroradiologist's MRI report, which the defendants reviewed in deciding the plaintiff's postoperative care, noted that the fat graft used in the surgery encroached on the spinal canal. The MRI report did not indicate that the graft was compressing the plaintiff's spinal nerves.

The plaintiff's experts, Dr. Robert Fink, a neurosurgeon; Dr. Sheldon Jordan, a neurologist; and Dr. Joel Meyer, a neuroradiologist, claimed the MRI films were "terrible." The MRI films clearly showed the fat graft inserted by the defendants during the plaintiff's surgery was compressing his nerves. They opined that the defendants should have immediately performed decompression surgery to remove the pressure and avoid permanent nerve damage. Dr. Fink was the only expert to criticize the size of the fat graft used in the plaintiff's surgery.

---

[1]Consistent with the parties' briefs, we refer to the neuroradiologist using masculine pronouns. Additionally, it appears the court and the parties use the terms "radiologist" and "neuroradiologist" interchangeably when referring to this unnamed individual.

Dr. Meyer and Dr. Fink admitted that it is within the standard of care for neurosurgeons to rely on the findings of a neuroradiologist and take such findings into account in creating a treatment plan. Dr. Fink admitted the neuroradiologist reviewing the plaintiff's MRI films made no mention of nerve compression.

Dr. Maiman, the defense expert, testified he reviewed the plaintiff's postsurgical MRI films and concluded they did not show any significant compression. Dr. Maiman concluded the defendants complied with the standard of care during their treatment of the plaintiff. Dr. Maiman opined, based on the circumstances presented by the plaintiff after the laminectomy, that decompression surgery was not required. He also attributed the plaintiff's symptoms to normal inflammation and swelling following the procedure, the plaintiff's diabetic condition, and his weakened nerves from his procedure in 1994.

At the close of the evidence, the defendants persuaded the circuit court to give the long form of Illinois Pattern Jury Instructions, Civil, No. 12.04 (2006) (sole proximate cause instruction) (IPI), over the plaintiff's objection. The long form includes the second paragraph of the instruction. The instruction informed the jury:

"More than one person may be to blame for causing an injury. If you decide that the defendants were negligent and that their negligence was a proximate cause of injury to the plaintiff, it is not a defense that some third person who is not a party to the suit may also have been to blame.

However, if you decide that the sole proximate cause of injury to the plaintiff was the conduct of some person other than the defendant, then your verdict should be for the defendant." IPI Civil (2006) No. 12.04.

During closing arguments, the defendants presented two different grounds supporting a finding of no liability. The defendants argued the fat graft was not compressing the plaintiff's nerves and, therefore, they were not negligent in failing to perform a decompression surgery. The defendants further argued that if the MRI films showed compression, as the plaintiff's experts testified, then the university neuroradiologist's omission of that fact in the report was the sole proximate cause of the plaintiff's injury. The jury received the case in the early afternoon on December 14, 2007, and returned a general verdict in favor of the defendants on the same day.

The plaintiff filed a posttrial motion asserting three errors; the court considered only one to have merit. The plaintiff claimed the circuit court erred in giving the long form of IPI Civil (2006) No. 12.04 because there was no evidence to support the unnamed neuroradiologist as the sole proximate cause of the plaintiff's injury. The court

agreed and granted the plaintiff's request for a new trial. The court admitted "the predicate to giving the long form of IPI Civil (2006) No. 12.04 is that there be some competent evidence to support the giving of the same," but found, "there is no competent evidence that anyone was misled or that the defendants were relying on the neuroradiologist." The circuit court characterized its error as "vividly apparent" in light of the defendants' closing argument that "the radiologist made a mistake or misled Dr. Ausman" because "there is no evidence anyone was misled." The court found the evidence showed the defendant doctors relied on their own interpretation of the MRI films and determined their own treatment plan for the plaintiff without input from the neuroradiologist. Accordingly, the circuit court found it erred in tendering the long form of IPI Civil (2006) No. 12.04 to the jury. The court found its error misled the jury and resulted in prejudice to the plaintiff. Accordingly, the court granted the plaintiff's request for a new trial. In its written order, the circuit court did not explain how the jury was "misled" by the instruction or the manner in which the plaintiff was "prejudiced" by the instruction. We granted the defendants' petition for leave to appeal.

## ANALYSIS

The defendants contend the circuit court erred in granting the plaintiff's posttrial motion for a new trial for two separate and distinct reasons. First, the defendants argue the circuit court was correct in its initial decision that the trial evidence supported giving the long-form proximate cause instruction. Second, the defendants contend the jury's general verdict in their favor is beyond review based on the two-issue rule in the absence of special interrogatories, which would have disclosed the basis for the jury's verdict. We address the two-issue rule argument first.

## The Two-Issue Rule

The defendants contend the circuit court erred in granting a new trial based on a claimed erroneous jury instruction without considering the application of the two-issue rule, described in *Strino v. Premier Healthcare Associates*, 365 Ill. App. 3d 895, 904, 850 N.E.2d 221 (2006) ("The rule applies to errors in instructions"). In this case, according to the defendants, if the jury determined that the defendant doctors did not deviate from the standard of care, then any error in giving the long-form proximate cause instruction "would have had no effect on the verdict." *Strino*, 365 Ill. App. 3d at 904-05. We agree.

The jury's verdict in favor of the defendant doctors can be explained by either of two factual determinations: (1) the MRI films did not disclose a nerve compression and, therefore, the defendant

doctors were not negligent in failing to perform a decompression procedure; or (2) the MRI films disclosed a nerve compression but the university neuroradiologist, as a member of the team with the defendant doctors and the more proficient of the four doctors in reading MRI films, failed to report a nerve compression. The defendants testified the neuroradiologist conferred with them regarding his opinion before they concluded there was no nerve compression.

The jury was presented with conflicting evidence regarding what the MRI films of the plaintiff's spine disclosed. The plaintiff's experts, Dr. Fink, Dr. Jordan, and Dr. Meyer, all testified that the MRI films were "terrible." According to these experts, the MRI films clearly showed the fat graft inserted by the defendants during the plaintiff's surgery was compressing his nerves. They opined that the defendants should have immediately performed decompression surgery to remove the pressure and avoid permanent nerve damage.

The defendants presented the contrary view of the MRI films. Dr. Ausman testified that his team, including the university neuroradiologist, concluded the plaintiff's MRI films showed no signs of nerve compression. Drs. Roitberg and Hersonkey testified in like fashion. The defendants' expert, Dr. Maiman, testified he reviewed the plaintiff's postsurgical MRI films and concluded they did not show any significant compression. The university neuroradiologist did conclude in his report that the fat graft used in the laminectomy surgery encroached on the spinal canal, but the report did not indicate that the graft was compressing the plaintiff's nerves. While Dr. Meyer, the plaintiff's neuroradiologist expert, suggested that the "encroachment" identified by the university neuroradiologist was the equivalent of a nerve compression (though he would not have described what he saw on the MRI films as an encroachment), he admitted the MRI report made no mention of nerve compression.

In accord with Illinois Pattern Jury Instructions, Civil, No. 21.02 (1995), the jury was instructed on the propositions the plaintiff had the burden of proving. The first proposition was that the defendants were negligent. The jury was instructed that if this proposition was not proved, then the verdict should be for the defendants. The proximate cause element of the issues instruction was the third proposition. Before the jury had to reach and resolve the proximate cause issue, the jury had to conclude that the defendant doctors deviated from the standard of care in treating the patient. Whether the defendant doctors deviated from the standard of care would turn on whether the MRI films were "terrible" in clearly showing nerve compression, as the plaintiff contended. If the jury rejected this view of the MRI films evidence, then the jury was free to conclude that the

defendant doctors were not negligent; they did not deviate from the standard of care. If the jury so concluded, there would have been no need for the jury to consider the proximate cause element of the plaintiff's case.

The circuit court, in addressing whether it erred in giving the sole proximate cause instruction, went directly to the mental processes of the jury on the issue of proximate cause. The circuit court characterized its error in giving the instruction as "vividly apparent" in light of the defendants' closing argument that "the radiologist made a mistake or misled Dr. Ausman" because, as the court concluded, "there is no evidence anyone was misled." In effect, the circuit court began its analysis with a presumption that the MRI films showed nerve compression. Only if there was nerve compression would there be any basis to examine the record to determine whether "anyone was misled." The circuit court engaged in this analysis without first considering whether the trial evidence was conflicting on the issue of negligence. The circuit court's analysis is perhaps explained by the supreme court's observation in *McDonnell v. McPartlin*, 192 Ill. 2d 505, 522, 736 N.E.2d 1074 (2000). Given the relationship between negligent conduct and proximate cause, "there is a pronounced tendency when considering one to include the other."

■ Here, the circuit court should have first considered whether the jury's verdict could be explained by a finding of no negligence against the defendant doctors. If there was no negligence, then instructing on sole proximate cause did not matter. Because the trial evidence was conflicting on the issue of negligence, the jury's verdict in favor of the defendant doctors might well have been based on its determination that the MRI films did not show nerve compression. Stated differently, the jury's resolution of the factual question regarding what was disclosed on the MRI films may well have been that the films did not disclose nerve compression, ending the jury's analysis with a finding of no negligence, no deviation from the standard of care, and a verdict for the defendants.

As the *Strino* court explained: "Because neither party submitted special interrogatories, we cannot determine from the general verdict whether any error in the contributory negligence instruction affected the verdict." *Strino*, 365 Ill. App. 3d at 905. Following *Strino*, in the absence of special interrogatories answering whether the plaintiff proved negligence based on the MRI films disclosing a nerve compression, we cannot determine from the general verdict whether the sole proximate cause instruction made any difference.

The supreme court made clear in *McDonnell*, 192 Ill. 2d at 521, "[t]he second paragraph of IPI Civil 3d No. 12.04 properly reflects the

defendant's right to attempt to negate a *single element* of the plaintiff's medical negligence claim, *i.e.*, the element of proximate cause." (Emphasis added.) The jury's analysis here might well have concluded with a verdict in favor of the defendant doctors without reaching the element of proximate cause.

We find the circuit court erred in granting the plaintiff a new trial based on the sole proximate cause instruction where the jury might well have concluded that the defendant doctors were not negligent in returning its general verdict in favor of the defendants.

### Sole Proximate Cause Instruction

Even if we were to review this appeal on a clean slate, without considering the two-issue rule, and find that instructing the jury with the sole proximate cause instruction was error, we would reach the same conclusion that the circuit court erred in granting the plaintiff a new trial because the plaintiff was not prejudiced by the instruction. "As a general rule, a new trial should be granted for improper jury instructions only where the opposing party has suffered serious prejudice from the offending instruction." *Thompson v. MCA Distributing, Music Corp. of America*, 257 Ill. App. 3d 988, 991, 629 N.E.2d 206 (1994).

The circuit court found the evidence showed the defendant doctors relied on their own interpretation of the MRI films and determined their own treatment plan for the plaintiff without input from the neuroradiologist. Accordingly, the circuit court concluded it erred in giving the long form of IPI Civil (2006) No. 12.04 to the jury, which resulted in prejudice to the plaintiff. The plaintiff argues the jury should not have been instructed as to the defendants' sole proximate cause defense in the absence of competent evidence that Dr. Ausman was either misled by, or relied upon, the team neuroradiologist's conclusion that there was no nerve compression.

The defendant doctors assert the record evidence makes clear the circuit court was correct in its initial assessment that there is "some evidence" to support giving the sole proximate cause instruction. The "some evidence" standard is set out in *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 658 N.E.2d 450 (1995), and the defendant doctors contend the circuit court, in reversing its initial assessment of the evidence, went beyond what is permissible under *Leonardi*. As the circuit court noted, the some evidence standard is a recognition of the existence of a "factual question," which must be left to the jury to resolve. In reversing its initial assessment, the defendants contend the circuit court impermissibly removed that factual question determination from the jury.

We decline to review the record evidence to determine whether the circuit court was correct in its initial assessment. Rather, our analysis begins and ends with the prejudice requirement to warrant a new trial. Based on our review of Illinois case law, the plaintiff was not prejudiced by instructing the jury on the sole proximate cause defense, and absent a showing of serious prejudice to the plaintiff, it is an abuse of discretion to grant a new trial based on an erroneous jury instruction. *Thompson*, 257 Ill. App. 3d at 991.

The plaintiff acknowledged at oral arguments that there is no precedent that holds the giving of the sole proximate cause instruction results in prejudice to a plaintiff. Nor did the order of the circuit court identify the prejudice the plaintiff purportedly suffered by the giving of the sole proximate cause instruction here. More to the point, to warrant a new trial, it is the plaintiff's burden to demonstrate that the sole proximate cause instruction caused him prejudice. That is, he must persuasively answer the question how the error in so instructing the jury misled it to find in favor of the defendants.

The second paragraph of the proximate cause instruction has been held " 'to correct any negative implications arising from the first paragraph.' " *Ellig v. Delnor Community Hospital*, 237 Ill. App. 3d 396, 408, 603 N.E.2d 1203 (1992), quoting *Miyatovich v. Chicago Transit Authority*, 112 Ill. App. 2d 437, 443, 251 N.E.2d 345 (1969). "[T]he short form of the instruction tells the jury that it is not a defense that someone *** else may be to blame. This instruction is implicitly biased towards the plaintiffs' case." *Ellig*, 237 Ill. App. 3d at 408. The plaintiff here does not claim that the second paragraph itself raises negative implications against a plaintiff.

Rather, the plaintiff asserts in his brief that "the transcripts show that defendant did not introduce any evidence that they relied on the [MRI] report, so the [neuro]radiologist could not have influenced their behavior. The 12.04 instruction was therefore improper because there was no evidentiary foundation for its use. Reversal is warranted if a faulty instruction misleads the jury, and the trial court found that was the case here." However, trial errors happen. On occasion a trial judge may instruct the jury in the absence of evidentiary foundation for an instruction. On review, our concern is not with examining the evidentiary foundation for the instruction as much as the impact the instruction may have on the jury's deliberation. See *Kolakowski v. Voris*, 94 Ill. App. 3d 404, 413, 418 N.E.2d 1003 (1981) (jury verdict in favor of neurosurgeon infected by improper and prejudicial elements).

The second paragraph comes into play only where the defendant doctors may have been negligent but their negligence did not proximately cause any injury to the plaintiff. "A defendant raising the

sole proximate cause defense seeks to defeat a plaintiff's claim of negligence by establishing proximate cause solely in the act of another not a party to the suit. Accordingly, this defense is aptly referred to as the 'empty chair' defense." *McDonnell*, 192 Ill. 2d at 516, quoting *Leonardi*, 168 Ill. 2d at 92. However, " '[t]he sole proximate cause defense merely focuses the attention of a properly instructed jury *** on the plaintiff's duty to prove that the defendant's conduct was a proximate cause of plaintiff's injury.' " *McDonnell*, 192 Ill. 2d at 520-21, quoting *Leonardi*, 168 Ill. 2d at 94. We are unconvinced that the giving of the second paragraph caused the plaintiff any prejudice by merely focusing the jury's attention on the plaintiff's duty to prove that the defendants' conduct was a proximate cause of the injuries he claimed.

Here, each of the defendant doctors, along with their expert, testified that the MRI films did not disclose a nerve compression. The testimony against them by the plaintiff's experts was that the MRI films were "terrible," clearly showing nerve compression. Dr. Ausman conceded in his testimony that if the MRI films disclosed a nerve compression, then the standard of care required that a decompression procedure be performed. It is virtually undisputed that if a decompression procedure was required, then the injuries to the plaintiff of permanent nerve damage would necessarily follow if no decompression procedure was performed. The permanent nerve damage flowed directly from the failure to perform a decompression procedure, the negligence claim against the defendants. If the MRI films showed nerve compression, then each of the defendant doctors was wrong in his reading of the MRI films and each could have been found negligent under the plaintiff's theory. If there was negligence then inexorably proximate cause for the plaintiff's injuries flowed from that negligence.

In other words, under the facts of this case, neither the sole proximate cause instruction nor the defendant's argument that the team neuroradiologist could have been the sole proximate cause, could have reasonably swayed the jury if it found negligence on the part of the defendant doctors. See *Dabros v. Wang*, 243 Ill. App. 3d 259, 270, 611 N.E.2d 1113 (1993) ("had the jury found that defendant breached the applicable standard of care, the 'injury' it would have considered was *** the injury caused by defendant's improper diagnosis and treatment"). Proximate cause was not central to the plaintiff's case or the defense put forth by the defendant doctors. This case turned on whether the MRI films showed nerve compression. Nor are we persuaded that the instruction on sole proximate cause somehow misled the jury to resolve the plaintiff's claim on proximate cause grounds rather than negligence.

If the plaintiff met his burden of persuading the jury that the MRI

films were "terrible" in that they clearly showed nerve compression, then the jury's verdict would have been for the plaintiff because each defendant doctor testified that he saw no nerve compression on the MRI films. We are at a loss to identify any prejudice to the plaintiff by the giving of the sole proximate cause instruction; no satisfactory answer is given by the plaintiff how the second paragraph misled the jury.

Finally, we briefly address the plaintiff's claim at oral argument that the prejudice he suffered was based on the improper argument made by the defendant doctors. The circuit court found that its decision to give the sole proximate cause instruction was "vividly apparent" error in light of the defendants' closing argument that "the [neuro]radiologist made a mistake or misled Dr. Ausman" because "there is no evidence anyone was misled." In effect, the plaintiff echoes this complaint against the defendants' closing argument before us.

To the extent the defendants' closing argument was unsupported by the evidence, it was incumbent upon the plaintiff to object. See *Bulleri v. Chicago Transit Authority*, 41 Ill. App. 2d 95, 104, 190 N.E.2d 476 (1963) (finding it improper for counsel to argue to the jury facts in his own knowledge, not testified to by any witness). Because no objection was made, the claim is forfeited. *Simmons v. University of Chicago Hospitals & Clinics*, 162 Ill. 2d 1, 12, 642 N.E.2d 107 (1994).

Instructing the jury on the sole proximate cause defense does not open the door to an argument wholly unsupported by the evidence. Stated differently, an erroneously given instruction does not relieve a party from objecting to closing arguments wholly unsupported by the evidence. Such an argument is clearly improper and requires an objection to preserve the claimed error. "Parties cannot harbor unspoken objections pending the jury's verdict and then use belated objections and motions for mistrial to get a second chance for a favorable verdict." *Strino*, 365 Ill. App. 3d at 904. A timely objection might well have alerted the trial judge to an argument he did not anticipate when he approved the disputed instruction. If the objection had been sustained, the error might well have been cured. We will not entertain on appeal an unpreserved error merely because the offending party might have claimed his argument was supported by a jury instruction approved by the trial judge. In a different context, the supreme court made the distinction between argument and instruction on the sole proximate cause defense clear.

> "The issue of whether a defendant is entitled to argue to the jury that the nonparty physician was negligent is separate and distinct from the issue of whether a defendant is entitled to have the jury instructed on the defense of sole proximate cause.

\* \* \*

Whether a defendant may argue that the nonparty physician is negligent is governed by the same principles applicable to other arguments made in closing." *McDonnell*, 192 Ill. 2d at 523-24.

Thus, even if we were to agree with the circuit court that it erred in giving the sole proximate cause instruction, we are unpersuaded that the giving of that instruction relieved the plaintiff from objecting to an argument that would have been improper with or without the instruction.

■ We find the circuit court abused its discretion in granting a new trial because the plaintiff has made no showing that he was prejudiced by the giving of the sole proximate cause instruction. To the extent the plaintiff claims he was prejudiced by the defendant doctors' argument that the plaintiff claims was unsupported by the trial evidence, the plaintiff was required to object. Absent an objection, the plaintiff is barred from relying on any prejudice he contends flowed from the circuit court's initial assessment that the evidence supported giving the sole proximate cause instruction, a decision we see no reason to examine further.

## CONCLUSION

The jury's general verdict in favor of the defendant doctors is beyond review here, because in the absence of special interrogatories, we cannot determine whether the jury decided in the defendant doctors' favor based on evidence that they did not deviate from the standard of care in foregoing a decompression procedure.

In any event, the circuit court abused its discretion in awarding the plaintiff a new trial based solely on the giving of the sole proximate cause instruction. While it may have been error to put before the jury the possibility that the conduct of some third person was the sole proximate cause of the plaintiff's injuries, we find no prejudice to the plaintiff by focusing the jury's attention on the plaintiff's duty to prove that the defendants' conduct was a proximate cause of the injuries he claimed.

Reversed and remanded with directions that the jury's verdict be reinstated.

Reversed and remanded.

WOLFSON and HALL, JJ., concur.