KRYSTYNA ORZEL, Plaintiff-Appellant, v. CONRAD SZEWCZYK *et al.*, Defendants-Appellees.

First District (1st Division)    No. 1—08—2240

Opinion filed May 11, 2009.

Ashley Danielle Lyles and Joseph Michael O'Callaghan, both of O'Callaghan & Colleagues, P.C., of Chicago, for appellant.

Patricia L. Argentati and Shana A. O'Grady, both of Mulherin, Rehfeldt & Varchetto, P.C., of Wheaton, for appellees.

JUSTICE WOLFSON delivered the opinion of the court:

In order to decide this legal malpractice case the jury first had to decide another case. That other case is referred to as a "case within a case." Plaintiff Krystyna Orzel sued defendants Conrad Szewczyk, James Kash, and Kash & Szewczyk, P.C., alleging legal malpractice in an underlying slip and fall negligence case. The jury found in defendants' favor.

On appeal, plaintiff contends: (1) she was entitled to a judgment notwithstanding the verdict; (2) she was entitled to a new trial because the verdict was against the manifest weight of the evidence; (3) the jury was improperly instructed to consider contributory negligence; (4) the trial court erred in admitting testimony and evidence regarding other injuries plaintiff suffered that were unrelated to her claimed injury; and (5) the trial court improperly admitted a surveillance video of the plaintiff. We affirm the jury's verdict.

FACTS

On January 8, 1996, plaintiff was injured when she slipped and fell on an allegedly unnatural accumulation of ice hidden by snow on a sidewalk outside of her apartment building. Plaintiff retained Conrad Szewczyk and the law firm of Kash & Szewczyk, P.C., to represent her in a slip and fall personal injury lawsuit against her landlord, Danny O'Leary. Plaintiff's underlying negligence complaint was dismissed with prejudice after defendants failed to properly name the landlord as a party within the applicable statute of limitations period.

Plaintiff filed a second amended complaint against the defendants on February 7, 2008, alleging professional negligence, fraud, and estoppel as to defendants' use of the statute of repose. Defendants filed an

answer to the second amended complaint and seven affirmative defenses, including the affirmative defense of contributory negligence. Although defendants admitted to a breach of duty by failing to timely file a proper complaint in the underlying negligence lawsuit, they denied plaintiff would have prevailed against the defendant-landlord if the case had proceeded to trial.

Plaintiff filed a motion to strike each of defendants' affirmative defenses. The trial court granted plaintiff's motion to strike, except as to the "1st affirmative defense" of contributory negligence. The court granted defendants' oral motion to amend their third and fourth affirmative defenses, which related to the statute of limitations and the statute of repose. The written court order, which was prepared by plaintiff's attorney, directed defendants to designate the repled third and fourth amended defenses as the first and second affirmative defenses in the revised affirmative defenses pleading. Defendants did not replead contributory negligence in the revised pleading. No order striking the affirmative defense of contributory negligence was entered.

Following a trial, the jury found in favor of the defendants. The trial court denied plaintiff's posttrial motion for judgment notwithstanding the verdict or a new trial. Plaintiff appeals.

## DECISION

### I. Contributory Negligence

#### A. Estoppel

Plaintiff contends the jury was improperly instructed to consider her contributory negligence. Specifically, plaintiff contends defendants should be estopped from asserting a contributory negligence defense in the malpractice action because defendants admitted that in the underlying negligence case they signed an amended complaint and filed a response denying O'Leary's affirmative defense of contributory negligence. Plaintiff contends that by filing the pleadings in the underlying personal injury case, defendants certified they believed her case had merit and plaintiff was not contributorily negligent when she fell. In support of her contention, plaintiff notes defendant Szewczyk admitted at trial that he believed plaintiff had a meritorious case while he was representing her.

■ Initially, we note plaintiff forfeited any estoppel objection to the contributory negligence instruction.

Plaintiff objected to the admission of a contributory negligence instruction during the jury instruction conference, arguing "there is no contributory negligence petition currently pending." The trial court admitted the instruction, finding:

"That was one of the affirmative defenses that was raised by the Defendant as part of this lawsuit. We have proof on the record that the jury could decide based upon that proof that the Plaintiff was 50 percent or more responsible, or 50 percent or less responsible. As far as I'm concerned, it's up to the jury to decide how to assess the fault of Mr. O'Leary and Ms. Orzel in rendering any decision in this case."

Although plaintiff raised estoppel in her posttrial motion, she forfeited the issue by never objecting at trial to the contributory negligence instruction on estoppel grounds. See *Jones v. Rallos*, 384 Ill. App. 3d 73, 83, 890 N.E.2d 1190 (2008) ("when an objection is made, specific grounds must be stated and other grounds not stated are waived on review"). Both an objection at trial and a written post-trial motion raising the issue are necessary to preserve an error for appellate review. *Kel-Keef Enterprises, Inc. v. Quality Components Corp.*, 316 Ill. App. 3d 998, 1021, 738 N.E.2d 524 (2000), citing *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988).

Moreover, plaintiff cites no legal authority in support of her estoppel contention in her opening brief. Under Supreme Court Rule 341(e)(7), an appellate brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." 188 Ill. 2d R. 341(e)(7). A party's failure to cite supporting authority is a violation of Rule 341(e)(7), and we may consider those issues forfeited. *American Service Insurance Co. v. Pasalka*, 363 Ill. App. 3d 385, 394-95, 842 N.E.2d 1219 (2006).

Forfeiture or not, defendants were not estopped from raising a contributory negligence affirmative defense in the legal malpractice action based on their conduct in the underlying negligence litigation.

In *Ignarski v. Norbut*, 271 Ill. App. 3d 522, 529-30, 648 N.E.2d 285 (1995), this court considered whether the defendant-attorneys in a legal malpractice lawsuit were equitably estopped from denying the underlying complaint stated a meritorious action by virtue of defendant Alex Norbut's conduct in the underlying litigation. Norbut filed a complaint on the plaintiff's behalf in the underlying lawsuit. During his deposition for the legal malpractice action, Norbut admitted he filed the lawsuit on plaintiff's behalf because, as a result of his research, he felt plaintiff had a meritorious claim worth pursuing. Plaintiff contended the defendants should not be allowed to deny what Norbut had previously admitted. The court recognized plaintiff essentially sought to dispose of the proximate cause requirement. *Ignarski*, 271 Ill. App. 3d at 529.

The court noted that in *Kohler v. Woollen, Brown & Hawkins*, 15 Ill. App. 3d 455, 304 N.E.2d 677 (1973), the defendant-attorneys in a legal malpractice action had successfully prosecuted arbitration claims on the plaintiff's behalf and obtained two awards. The awards were subsequently vacated because the defendant-attorneys' demands for arbitration were not filed within the proper limitations period. The *Kohler* court—noting defendants continued to assert the validity of the awards throughout the underlying proceedings before the arbitrator, in the circuit court and in the appellate court, and in the supreme court until leave to appeal was denied—held the defendants were estopped from denying the validity of the arbitration awards in the plaintiff's legal malpractice action. See *Ignarski*, 271 Ill. App. 3d at 529-30, citing *Kohler*, 15 Ill. App. 3d at 458.

Distinguishing *Kohler*, the *Ignarski* court held the plaintiff's underlying personal injury action "was dismissed in its initial pleading stages *without an evidentiary hearing.*" (Emphasis added.) *Ignarski*, 271 Ill. App. 3d at 530. The court held that although Norbut gave an affirmative answer when questioned whether the lawsuit he filed on the plaintiff's behalf was meritorious and worth pursuing, it was "difficult to understand how or why he would have responded in any other fashion." *Ignarski*, 271 Ill. App. 3d at 530. The court held Norbut's response was his subjective opinion, not a judicial admission, and "[s]uch a general conclusion should not be considered so all conclusive." *Ignarski*, 271 Ill. App. 3d at 530. See also *Dunavan v. Calandrino*, 167 Ill. App. 3d 952, 962, 522 N.E.2d 347 (1988) ("In the case before us, it appears that the defendants did little more than file a complaint on behalf of the plaintiff. Although the case eventually came before this court on the issue of whether defendants had named the proper party [citation], argument was not had on the merits of the claim. This distinguishes the instant case from *Kohler*").

Here, similar to *Ignarski* and *Dunavan*, plaintiff's underlying negligence action was dismissed at the pleadings stage based on the defendants' failure to properly name a party. Although the defendants, on plaintiff's behalf, signed an amended complaint and filed a response denying plaintiff was contributorily negligent in the underlying litigation, the merits of the claims never were fully tested through adversarial argument or at an evidentiary hearing. Moreover, Szewczyk's testimony that he believed plaintiff had a meritorious case while he was representing her in the underlying litigation was merely his subjective opinion, not a judicial admission. See *Ignarski*, 271 Ill. App. 3d at 530. Estoppel does not apply here. See *Ignarski*, 271 Ill. App. 3d at 530; *Dunavan*, 167 Ill. App. 3d at 962.

B. Abandonment of the Affirmative Defense

Plaintiff contends the evidence presented in this case did not justify giving a contributory negligence instruction to the jury. Plaintiff also contends defendants abandoned the contributory negligence defense by failing to replead it with their other revised affirmative defenses. See *Pfaff v. Chrysler Corp.*, 155 Ill. 2d 35, 61, 668 N.E.2d 51 (1992) ("where an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be part of the record for most purposes, being in effect abandoned and withdrawn").

We will not reverse a trial court's decision to give a jury instruction unless the court abused its discretion. *LaSalle Bank, N.A. v. C/HCA Development Corp.*, 384 Ill. App. 3d 806, 813, 893 N.E.2d 949 (2008).

Although a signed jury verdict form was not included in the record here, the trial court's instructions to the jury indicated that "if you find for Conrad Szewczyk and Kash and Szewczyk PC and against the plaintiff *or* if you find that her contributory negligence was more than 50 percent of the total proximate cause of the injury for which recovery is sought, then you should use verdict form C." (Emphasis added.) Verdict form A or verdict form B was to be used only if the jury found in plaintiff's favor on liability. The jury instructions indicate verdict form C read: "we find for the defendants, Szewczyk and Kash and Szewczyk PC and against the plaintiff." The jury found in defendants' favor, indicating it used verdict form C.

Verdict form C did not distinguish between a finding that plaintiff had not met her burden of proof from a finding that plaintiff was over 50% contributorily negligent. Plaintiff made no effort to separate the two results. Nor did she offer any special interrogatory that would provide guidance as to how the jury decided the case.

■ In *Strino v. Premier Healthcare Associates, P.C.*, 365 Ill. App. 3d 895, 904, 850 N.E.2d 221 (2006), this court recognized the "two-issue" rule:

> " '[W]here there are two causes of action, or two defenses, thereby raising separate and distinct issues, and a general verdict has been returned, and the mental processes of the jury have not been tested by special interrogatories to indicate which of the issues was resolved in favor of the successful party, it will be presumed that all issues were so determined ***.' " *Strino*, 365 Ill. App. 3d at 904, quoting *H.E. Culbertson Co. v. Warden*, 123 Ohio St. 297, 303, 175 N.E. 205, 207 (1931).

See also *Tabe v. Ausman*, 388 Ill. App. 3d 398, 402 (2009).

■ When the jury returned a verdict in favor of defendants in this case, it could have decided defendants were not liable because plaintiff failed to meet her burden of proof regarding the underlying slip and fall negligence case. Or, the jury could have found plaintiff was more than 50% at fault for her injuries. We simply do not know what the jury decided here, other than that defendants were not liable. The jury may have reached a verdict in defendants' favor without ever considering the issue of contributory negligence. Based on the general verdict returned, we cannot say the contributory negligence instruction made a difference in this case. See *Tabe*, 388 Ill. App. 3d at 404; *Strino*, 365 Ill. App. 3d at 905 ("Because neither party submitted special interrogatories, we cannot determine from the general verdict whether any error in the contributory negligence instruction affected the verdict").

II. Judgment Notwithstanding the Verdict

Plaintiff contends the trial court erred by not entering a judgment notwithstanding the verdict in her favor. Specifically, plaintiff contends the evidence presented at trial so overwhelmingly favored her that no contrary verdict could stand. We disagree.

Judgment *non obstante veredicto*, or judgment *n.o.v.*, is appropriate where " 'all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.' " *Townsend v. University of Chicago Hospitals*, 318 Ill. App. 3d 406, 408, 741 N.E.2d 1055 (2001), quoting *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504 (1967). Our review of an order granting judgment *n.o.v.* is *de novo*. *Aquilera v. Mount Sinai Hospital Medical Center*, 293 Ill. App. 3d 967, 972, 691 N.E.2d 1 (1997).

The elements of a legal malpractice action are: (1) the existence of an attorney-client relationship that establishes a duty on the part of the attorney; (2) a negligent act or omission constituting a breach of that duty; (3) proximate cause; and (4) damages. *First National Bank of LaGrange v. Lowrey*, 375 Ill. App. 3d 181, 196, 872 N.E.2d 447 (2007).

The underlying theory in a legal malpractice cause of action is that the plaintiff client would have been compensated for an injury caused by a third party, absent negligence on the part of the client's attorney. *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 226, 856 N.E.2d 389 (2006). To establish proximate cause the plaintiff must essentially prove a "case within a case," which means "but for the attorney's negligence, the plaintiff would have prevailed in the underlying action." *First National Bank of LaGrange*, 375 Ill. App. 3d at 196; *Tri-G, Inc.*, 222 Ill. 2d at 226.

The jury was instructed that in order for plaintiff to establish her "case within a case" she was required to prove: (1) there was an unnatural accumulation of ice on the premises which presented an unreasonable risk of harm: (2) O'Leary, the landlord, knew or should have known both of the condition and of the risk; (3) O'Leary should have expected that people on the premises would not discover or realize the danger or protect themselves against the danger; (4) O'Leary was negligent in failing to maintain the gutters so that they would not leak; (5) plaintiff was injured; and (6) O'Leary's negligence proximately caused plaintiff's injury.

At trial, plaintiff testified that around 8:30 a.m. on January 8, 1996, she was walking on the sidewalk on the northwest corner of her apartment building when she slipped and fell on ice. According to plaintiff, she was walking carefully because "there was a little snow" covering the entire sidewalk and the grass. She said she was wearing tennis shoes and was not distracted while walking. The sidewalk did not feel slippery and she did not see any ice on the sidewalk under the snow prior to the fall. Plaintiff had no problems walking on the sidewalk until she got to the northwest corner of the building, where she fell. Plaintiff suffered a severe injury to her upper back as a result of the fall. Plaintiff said that as part of her lease with O'Leary, he agreed to take care of the maintenance of the building and the cleaning of the sidewalks. Plaintiff testified she noticed water leaking from the gutters in the summer of 1995 and notified O'Leary regarding the leak. Plaintiff also testified plaintiff's exhibits 101, 102, and 103 were photographs depicting the location where she fell on the sidewalk.

Although plaintiff's apartment and her car were located at the front of the apartment building, plaintiff said she routinely used the sidewalk on the north side of the building leading to her back door. She preferred to use the back door because she did not feel safe using the front door due to a narrow hallway and adjacent apartment doors. Plaintiff said she did not see any water leaking from the gutter on the day of her fall. When asked on cross-examination whether she had previously testified at her deposition that she fell "much closer to the middle of the building *** I think 15 feet or so," plaintiff said she "maybe just misunderstood" the question. She said she was probably trying to say she fell "closer to the building" on the sidewalk. She admitted she had never seen water leaking from the gutter at the spot where she fell until after January 8, 1996. She could not remember if she had ever seen ice in the spot where she fell prior to her accident. She had never complained to O'Leary about ice on any part of the sidewalk until after the accident. Plaintiff also admitted O'Leary provided the residents with salt to use on the sidewalks if necessary.

Danny O'Leary testified at trial that he knew for more than 10 years the gutters on the northwest corner of the building leaked. He said he had attempted to make several repairs to the gutters himself, including putting a new roof on the building. He had also tried to have the gutters professionally repaired. He said some of his repairs were successful in stopping leaks.

O'Leary said he was aware ice would build up in that corner of the sidewalk as a result of the leak. He admitted he realized the ice on the sidewalk could present a risk to someone walking on the sidewalk, which was the reason he had attempted to repair the leak. He acknowledged that if snow fell and covered the sidewalk, and ice accumulated on that sidewalk, someone walking on the sidewalk would not necessarily see the ice. That could present a slip and fall risk. He said the sun could melt snow accumulated on the roof and cause the gutters to drip even when the temperature was below freezing.

O'Leary testified he never replaced the gutters on the building, even though the cost would have been under $1,000. Plaintiff's exhibits 101 and 102, which were photographs of the sidewalk near the northwest corner of the building taken by plaintiff's husband on the day of her fall, depicted an accumulation of snow and ice on the sidewalk. The exhibits showed where the ice would accumulate when the gutters leaked.

O'Leary testified he could not say whether the gutters were leaking when plaintiff fell. He also could not remember what the temperature was on the date of plaintiff's fall. He did not know whether there had been any precipitation that day or on the preceding days. Ice naturally formed on the sidewalk at times because of normal winter weather conditions. The first time plaintiff complained to him regarding problems with ice on the sidewalks was after she had fallen. O'Leary could not recall any complaints of ice on the sidewalks before plaintiff's fall. O'Leary said he made an effort to make salt available to the tenants to use on the walkways.

■ Enough evidence existed for the jury to determine defendants were not liable, contributory negligence aside. Although O'Leary admitted he was aware the apartment building's gutters leaked and could present problems with ice forming on the sidewalk, portions of his testimony suggested the ice on the sidewalk could have formed as a result of natural accumulation. Plaintiff also admitted she did not know whether the gutters had been leaking at the spot where she fell before or on the day of her accident. Viewing the evidence presented in the light most favorable to the defendants, we cannot say the evidence so overwhelmingly favored plaintiff that no contrary verdict could ever stand. See *Townsend*, 318 Ill. App. 3d at 408. We see no reason to disturb the jury's verdict.

III. Motion for a New Trial

We reject plaintiff's contention that the trial court should have found the jury's verdict was against the manifest weight of the evidence, necessitating a new trial.

A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the jury's findings are unreasonable, arbitrary, and not based on any evidence. *Redmond v. Socha*, 216 Ill. 2d 622, 651, 837 N.E.2d 883 (2005); *Maple v. Gustafson*, 151 Ill. 2d 445, 454, 603 N.E.2d 508 (1992). "A trial court cannot reweigh the evidence and set aside a verdict merely because the jury could have drawn different inferences [and] conclusions, or because the court feels that other results are more reasonable." *Maple*, 151 Ill. 2d at 452. A trial court's decision as to whether to grant a new trial will not be disturbed absent an abuse of discretion. *Redmond*, 216 Ill. 2d at 651.

Our review of the record reflects the evidence presented at trial adequately supported the jury's verdict. It was the jury's role to resolve conflicts in the evidence, to pass upon the witnesses' credibility, and to decide the weight to be given to the witnesses' testimony. *Maple*, 151 Ill. 2d at 452. We will not usurp the function of the jury and substitute our judgment "on questions of fact fairly submitted, tried, and determined from the evidence which did not greatly preponderate either way." *Maple*, 151 Ill. 2d at 452-53. The trial court did not abuse its discretion in refusing to grant plaintiff a new trial.

IV. Issues Regarding Damages

■ Plaintiff contends the trial court erred in admitting testimony and evidence at trial regarding "other injuries" plaintiff allegedly suffered after the fall. Following the denial of plaintiff's pretrial motions *in limine* to bar evidence regarding a worker's compensation claim and other injuries and disease, defendants were allowed to introduce evidence at trial regarding two of plaintiff's subsequent injuries.

Dr. Michael Solomon, a specialist in pain management, testified over plaintiff's objection that he treated plaintiff between 2004 and 2005 for right upper extremity pain, which began after an incident while she was painting her porch in June 2004. Dr. Solomon said plaintiff made no complaints regarding her neck or left upper extremity. Dr. Solomon said that all of plaintiff's complaints regarding pain made between 2004 and 2005 were caused by the June 2004 painting incident.

Dr. Ritchie Plummer, a worker's compensation physician, testified he examined plaintiff in relation to a fall at work on June 23, 2005, where she injured her neck, left arm, left shoulder, and left side. Dr.

Plummer said the only traumatic incident plaintiff reported in her history was the June 2005 work-related fall. He said plaintiff denied any prior complaints of injuries to her left arm, shoulder, or neck before the June 2005 fall. Plaintiff testified the worker's compensation claim had been denied.

Plaintiff contends defendants offered no evidence to prove the other injuries were related to plaintiff's claimed injury. Plaintiff contends the sole purpose in referring to plaintiff's other injuries was to prejudice the jury against her by disclosing the existence of entirely unrelated matters.

Plaintiff also contends the trial court erred by improperly admitting a surveillance video of the plaintiff filmed by defendants without her knowledge.

The trial court, outside the presence of the jury, examined plaintiff about the video. She identified herself in the video, identified the location of the video, and said the video was an accurate depiction of her daily activities as of December 2006. Based on plaintiff's testimony, the trial court held a proper foundation for the video had been laid. The court held defendants could present the surveillance video as impeachment if plaintiff testified she was unable to perform the same or similar activities depicted in the video. Following plaintiff's testimony, an edited version of the surveillance video was shown to the jury.

Initially, we note both of plaintiff's contentions about other injury evidence offered against her and the surveillance video ultimately go to the issue of her damages, not defendants' liability. After the jury found defendants were not liable, it was not required to consider the issue of damages. Accordingly, plaintiff's contentions are not relevant to this appeal. See *McDonnell v. McPartlin*, 303 Ill. App. 3d 391, 402, 708 N.E.2d 412 (1999); *Mattice v. Goodman*, 173 Ill. App. 3d 236, 242, 527 N.E.2d 469 (1988); *Lebrecht v. Tuli*, 130 Ill. App. 3d 457, 476, 473 N.E.2d 1322 (1985) ("Here, the jury returned a verdict in favor of defendants. It did not reach the damages issue; therefore, the issue is not pertinent to [this] appeal").

Although we recognize " ' "there may be cases in which errors which go to the question of damages may be so persuasive and prejudicial as to create the likelihood that they may have affected the jury's decision on the issue of liability," ' " the record reflects plaintiff's contentions do not rise to that level. *McDonnell*, 303 Ill. App. 3d at 402, quoting *Hall v. Dumitru*, 250 Ill. App. 3d 759, 766, 620 N.E.2d 668 (1993), quoting *Mulvey v. Illinois Bell Telephone Co.*, 53 Ill. 2d 599-600, 294 N.E.2d 689 (1973).

Any alleged errors in admitting the surveillance video or evidence regarding plaintiff's other injuries became harmless when the jury found for defendants on the issue of liability. See *McDonnell*, 303 Ill. App. 3d at 402; *Goodman*, 173 Ill. App. 3d at 242. Accordingly, we need not further examine the damages issues.

CONCLUSION

We affirm the jury's verdict.

Affirmed.

HALL and GARCIA, JJ., concur.