2019 IL App (2d) 180832-U
No. 2-18-0832
Order filed  December 2, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| BONNIE McCANN, | ) | Appeal from the Circuit Court |
| | ) | of Winnebago County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 15-L-156 |
| | ) | |
| RAO J. GONDI, M.D., and | ) | |
| ROCKFORD ANESTHESIOLOGISTS | ) | |
| ASSOCIATED, LLC | ) | Honorable |
| | ) | Edward J. Prochaska |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justice Burke and Justice Schostok concurred with the judgment.

**ORDER**

¶ 1    *Held*:    The trial court correctly entered judgment in favor of defendants and did not abuse its discretion in issuing the long form of the sole-proximate-cause jury instruction; affirmed.

¶ 2    After a week-long trial, the jury in this case returned a verdict in favor of defendants, Dr. Rao J. Gondi and Rockford Anesthesiologists Associated, LLC (collectively, Gondi). Plaintiff, Bonnie McCann, filed a motion for judgment notwithstanding the verdict (judgment *n.o.v.*), and in the alternative, for a new trial. The trial court denied the motion and entered judgment in accordance with the jury's verdict. McCann appeals, and for the reasons that follow, we affirm.

¶ 3     We briefly summarize the pertinent facts. In 1998, Ms. McCann learned she had breast cancer. She underwent a successful lumpectomy, and was in remission. During a regular screening in 2014, at the age of 72, she learned that her cancer had returned. In October 2014, Dr. Mehul Soni performed a bilateral mastectomy on McCann at Swedish American Hospital in Rockford.

¶ 4     Gondi was the anesthesiologist for McCann's surgery. Prior to surgery, Gondi reviewed McCann's records from her primary physician, which revealed that she had a history of chronic gastroesophageal reflux disease, or GERD. Gondi also informed McCann that he would be assisted by a third-year medical student, Max Vest. When it came time to sedate and intubate McCann, Gondi initially let Vest attempt to perform the intubation. After the tube was placed inside McCann's mouth and torso, Gondi listened for the sound of air from the lungs; when he heard none, he determined that Vest had improperly placed the tube in McCann's esophagus rather than in her trachea. Gondi removed the tube and inspected McCann for signs of injury. Seeing none, he properly placed the tube in McCann's trachea. Later, Soni performed surgery on McCann. After the surgery, Gondi wrote in the anesthesia notes that there had been an "atraumatic intubation, two attempts."

¶ 5     Upon waking from surgery, McCann stated that she had "10 out of 10" pain in her throat and neck and was having difficulty speaking and swallowing. The following morning, McCann reported her pain to a nurse, who notified Gondi. Gondi responded that McCann suffered from "severe GERD" and ordered Williams to switch McCann to a stronger antacid. A few hours later, Williams again called Gondi to report McCann's distress, but Gondi was in surgery. After leaving surgery that afternoon, Gondi went to see McCann. Gondi examined her and, again, assessed that she was suffering from GERD and prescribed yet another antacid, Mylanta. Gondi's progress notes

for this day recite that there had been "[an] easy atraumatic intubation in *one attempt*." (Emphasis added.) Gondi later testified that he "didn't realize" he entered the incorrect note.

¶ 6        Soni also examined McCann that afternoon and noted that she said she felt better after taking Mylanta. (It is undisputed that McCann did not present certain symptoms of an esophageal puncture, such as a fever or subcutaneous crepitation—*i.e.*, the presence of air bubbles under the skin.) Soni then discharged McCann from the hospital. Later, Gondi returned to see McCann, but by then she had already been discharged.

¶ 7        The next day, a representative from the hospital called McCann, and McCann reported that her pain had improved since being discharged. The following night, however, McCann returned to the hospital for extreme pain in her throat. After a CT scan, McCann was transferred to the emergency room at the University of Wisconsin Hospital in Madison for a possible esophageal perforation. At University Hospital, doctors discovered there were two perforations and McCann was diagnosed with a descending mediastinitis—a severe infection just below one of the perforations of her esophagus. McCann underwent three separate surgeries to address the infection and was hospitalized for 39 days. She also underwent extensive outpatient treatment and physical therapy.

¶ 8        McCann sued Gondi for medical malpractice and at trial submitted several theories of negligence to the jury. Gondi's defense asserted that there was no injury caused by his intubation, and that McCann was injured, if at all, by Soni because he had discharged her. According to the defense, McCann had a physiological condition, known as a Zenker's diverticulum, which either alone or in combination with GERD left her particularly susceptible to "a delayed perforation" after surgery through the intake of normal food and drink. After the closing arguments, the jury returned a general verdict in favor of Gondi and the trial court entered judgment.

¶ 9    McCann appeals and we affirm. McCann's first contention is that the trial court erred by entering the jury's verdict and by not entering a judgment *n.o.v.* or granting a new trial. Specifically, McCann asserts that no defense witnesses rebutted her expert's opinion on standard of care. She notes that at trial, an anesthesiologist, Dr. Allan Reed, testified that the standard of care required progress notes must be accurate. Thus, according to Reed, it was a deviation from the standard of care for Gondi to enter the "one attempt" progress note as there had been two attempts to intubate her. McCann further asserts that, had the progress note accurately reported the two attempts, Soni would then have suspected an esophageal perforation and would not have discharged her. Thus, according to McCann, the jury ignored Reed's "unrebutted" opinion on the standard of care, and therefore its verdict was either unreasonable or the product of passion or prejudice. See, *e.g.*, *Anderson v. Zamir*, 402 Ill. App. 3d 362, 367 (2010) (reversing damages award; reciting observation that jury verdict may not be contrary to uncontradicted testimony).

¶ 10   Gondi responds that McCann's standard-of-care evidence was *not* "unrebutted." The defense presented evidence from Dr. Stephen Minore, an anesthesiologist and a partner of Gondi's practice, who testified that the applicable standard of care permitted inadvertent misstatements. Thus, under defendant's formulation of Minore's testimony, so long as Gondi did not intentionally misstate the number of intubation attempts, there was no breach of the standard. We find that both parties' arguments miss the mark.

¶ 11   To establish a claim of medical malpractice against a health care provider, a plaintiff must prove: (1) the applicable standard of care; (2) a provider's negligent failure to comply with the applicable standard of care; and (3) a resulting injury proximately caused by the alleged negligence. *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 112 (2004). A motion for judgment *n.o.v.* asks the court to set aside the jury's verdict and enter judgment in favor of the movant, and may

be granted only when all of the evidence, viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict could stand. *Maple v. Gustafson*, 151 Ill. 2d 445, 453 (1992) (quoting *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967)). It is the jury's province to resolve conflicts in the evidence, determine witnesses' credibility, and decide the weight to give to witnesses' testimony. *Perkey v. Portes-Jarol*, 2013 IL App (2d) 120470, ¶ 58 (citing *Stapleton v. Moore*, 403 Ill. App. 3d 147, 165 (2010)). In ruling on a motion for a judgment *n.o.v.*, a court does not reweigh the evidence nor is it concerned with the credibility of the witnesses as those are matters for the jury. *Maple*, 151 Ill. 2d at 453. Rather, the court merely determines whether there was evidence to support the verdict that the jury has rendered. *Id*. Put differently, if there was *some* evidence to support the jury's verdict, the moving party is not entitled to judgment *n.o.v.* See *Vanderhoof v. Berk*, 2015 IL App (1st) 132927, ¶ 62 (citing *Perkey*, 2013 IL App (2d) 120470, ¶ 63). Similarly, a trial court should grant a motion for a new trial only if the verdict was contrary to the manifest weight of the evidence. *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 37. We review the denial of a motion for judgment *n.o.v. de novo*, and we review the denial of a motion for a new trial for an abuse of discretion. *Perkey*, 2013 IL App (2d) 120470, ¶¶ 54, 57.

¶ 12    As an initial matter, we note that Gondi's argument misstates Minore's testimony on standard of care. It is true that Minore stated, in passing, that a physician who "intentionally falsifies" a progress note would "obviously" violate the standard of care. But Minore did not stop there. Minore also affirmed that the purpose of charting is to ensure that patient records were truthful and accurate—or, as Minore put it, "That's the whole idea." Thus, when read in its entirety, Minore's testimony suggested that inadvertent charting errors *could* violate the standard of care, which was consistent with Reed's testimony. (Where Minore's and Reed's testimony differed

however was on the question of whether Gondi *did* violate the standard of care.) In addition, at oral argument, we pointed out that it would be absurd to say that *no* inadvertent misstatements in charting violate the standard of care. After all, a medical malpractice claim, by its nature, is a tort of negligence, not an intentional tort. See generally *Doe v. Northwestern University*, 289 Ill. App. 3d 39, 44 (1997). Thus, we have little difficulty in rejecting Gondi's interpretation of Minore's testimony.

¶ 13    That said, like the trial court, we also find that McCann's argument regarding the standard-of-care evidence is beside the point. It must be remembered that, "[a]fter deliberating, the jury returned a general verdict for the defendant; consequently, we do not know on what basis it found for defendant." *Maple v. Gustafson*, 151 Ill. 2d 445, 449 (1992). In other words, even if we accept McCann's underlying assumption that the jury may have (or should have) found in her favor on the limited question of standard-of-care, that assumption does not exclude the possibility that the jury may have found *against* McCann on the question of causation. Again, we simply cannot say. We are "foreclose[d] from review of a general verdict in favor of a defendant" on the basis of any specific issue "because '[t]he general verdict * * * creates a presumption that the jury found in favor of [the defendant] on *every* defense raised.' " (Emphasis added.) *Robinson v. Boffa*, 402 Ill. App. 3d 401, 409 (2010) (Garcia, J., specially concurring) (quoting *Lazenby v. Mark's Construction, Inc.*, 236 Ill. 2d 83, 102 (2010)). Here, defendant denied causation at trial, and we must presume the jury found in Gondi's favor on that dispositive issue. See *Tabe v. Ausman*, 388 Ill. App. 3d 398, 404 (2009). Therefore, the trial court did not err in denying McCann's motion for a judgment *n.o.v.* and did not abuse its discretion in denying her motion for a new trial.

¶ 14    McCann's second contention is that the trial court erred in instructing the jury using the second paragraph, or the "long form," of Illinois Pattern Jury Instructions, Civil No. 12.04

(hereinafter, IPI Civil No. 12.04), which informs the jury, "if you decide that the sole proximate cause of injury to the plaintiff was the conduct of some person other than the defendant, then your verdict should be for the defendant." *Id*. Despite the fact that the long form instruction is also known as the "empty chair defense," the instruction is not an affirmative defense. See *Douglas v. Arlington Park Racecourse, LLC*, 2018 IL App (1st) 162962, ¶ 35. Rather, the long form of the instruction " 'merely focuses the [jury's] attention * * * on the plaintiff's duty to prove that the defendant's conduct was a proximate cause of plaintiff's injury.' " *Id*., ¶ 36 (quoting *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 92-94 (1995). Whether the alleged conduct was negligent or not is not a factor; as long as the action was taken by a non-party, the defense is entitled to the instruction. *McDonnell v. McPartlin*, 192 Ill. 2d 505, 521-24 (2000).

¶ 15 We note that McCann's assertion of error is presented in the style of a closing argument devoted to factual issues rather than as an appellate brief addressing questions of law. As we have already noted, conflicts in the evidence were for the jury to sort out. In addition, despite the existence of nearly two dozen reported cases analyzing the long form instruction, McCann's briefs cite no pertinent authority discussing the instruction. We would be well within our rights to find the whole argument forfeited. Ill. S. Ct. R. 341(h)(7); see also *Sakellariadis v. Campbell*, 391 Ill. App. 3d 795, 804 (2009) (holding that the failure to elaborate on an argument or cite persuasive and relevant authority results in waiver of that argument). However, we elect to set aside the forfeiture as we can easily resolve this issue on the merits.

¶ 16 At the jury instruction conference, the trial court stated that it would give the long form of IPI Civil No. 12.04 on the basis that the defense would argue that either Vest or Soni proximately caused McCann's injuries. McCann asserts that issuing the instruction *vis-à-vis* Vest would seem to go against the notes accompanying the instruction, which state, "This instruction may not be

used where the third person was acting as the agent of the defendant or the plaintiff." IPI Civil No. 12.04, Committee Comments. We say "seem" because it is not altogether clear that a medical student is the agent of a supervising physician, let alone of the hospital. See generally *York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147, 179-95 (2006). We need not decide the issue, however, as it was clear that Soni was a non-defendant third party and the instruction was properly given on that basis. See, *e.g.*, *Douglas*, 2018 IL App (1st) 162962, ¶ 35 ("as long as a defendant can proffer some evidence in the record to support that sole proximate cause theory, that defendant is entitled to the long form of IPI Civil No. 12.04 [citations]") (internal quotation marks omitted).

¶ 17    We note that there is considerable disagreement on the question of whether it is proper for the trial court to use the long form of IPI Civil No. 12.04 where the defense identifies more than one person or cause for the alleged injury. Reasoned arguments can be made for either result depending, *inter alia*, on how one views the use of the word "sole" in the instruction. See, *e.g.*, *Douglas*, 2018 IL App (1st) 162962, ¶ 57 ("the word 'sole' does not necessarily imply only the singular"); *cf. Clayton v. County of Cook*, 346 Ill. App. 3d 367, 388 (2003) (holding instruction should not be given where "defendant presented evidence of multifactorial causes of death * * * rather than a *sole* proximate cause") (emphasis in original); see also *Douglas*, 2018 IL App (1st) 162962, ¶ 127 (Gordon, J., dissenting) ("[a]ny competent speaker of English would recognize that sole means one") (citation and internal quotation marks omitted). Our district has not directly confronted this issue, and we see no reason to do so here in the absence of any developed argument on the topic. McCann merely asserts that the instruction was "entirely improper[,]" "misleading[,] and confusing" because it "suggested that it was possible to blame Soni entirely" for McCann's injury. But that argument assumes that the jury found in plaintiff's favor on negligence in the first

place, which, similar to our discussion above (*supra* ¶ 13), rests on pure speculation. Here, because the jury returned a general verdict in favor of the defense, "we cannot determine from the general verdict whether the sole proximate cause instruction made any difference." *Tabe*, 388 Ill. App. 3d at 404.

¶ 18     In any event, we have already determined that the long form instruction was proper on the basis that the defense asserted Soni was responsible for the injury and Soni was a non-party in this case. See *McDonnell*, 192 Ill. 2d at 521-24. The trial court, therefore, did not abuse its discretion by giving the long form instruction.

¶ 19     For the reasons stated, we affirm the judgment of the Circuit Court of Winnebago County.

¶ 20     Affirmed.