SIXTH DIVISION
April 7, 2006

No. 1-04-3217

| | | |
|---|---|---|
| MARIA STRINO and FRANK STRINO, Individually and as Special Administrators of the Estate of Joseph Strino, Deceased, | ) ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellants, | ) ) ) | |
| v. | ) ) | |
| PREMIER HEALTHCARE ASSOCIATES, P.C., and JAMES R. LINDEMULDER, | ) ) ) | Honorable Robert Gordon, |
| Defendants-Appellees. | ) | Judge Presiding |

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

Maria and Frank Strino's son Joseph died at 20 months of age. The Strinos, as individuals and on behalf of Joseph's estate, sued the obstetrician who delivered Joseph for negligently causing the death and for negligently causing Joseph to suffer during his brief life. The obstetrician argued that he did not act negligently, and Frank, acting on Maria's behalf, refused the medical procedure that would have given Joseph the best chance of survival. After two days of deliberations the jury returned a general verdict in favor of the obstetrician.

On appeal plaintiffs argue that the court should have excluded evidence of Frank's acts because Frank did not act as Maria's agent for medical decisions. Plaintiffs also object to other evidentiary rulings, jury instructions, and answers to the jury's questions. We hold that defendants presented sufficient

evidence to support a finding that Frank acted as Maria's agent. The trial court did not abuse its discretion by sustaining an objection to the cross-examination of the obstetrician. Plaintiffs waived objection to other evidentiary rulings and the responses to jury questions. We cannot determine whether the instruction on contributory negligence had any prejudicial effect because plaintiffs did not request a special interrogatory to determine whether the jury decided in defendants' favor on the negligence issue. Therefore, we affirm the judgment of the trial court.

## BACKGROUND

Maria chose Dr. James Lindemulder to serve as her obstetrician in September 1996. Although Lindemulder knew that Maria delivered her first baby by cesarean section, he recommended that she try to deliver the baby due in 1997 by vaginal birth. Doctors refer to the procedure as a vaginal birth after cesarean, or VBAC for short. Maria agreed to try a VBAC. Lindemulder told her that if the VBAC failed he would perform a cesarean section.

Rush-Copley Medical Center admitted Maria on March 27, 1997, for delivery of her baby. She signed all consent forms the hospital asked her to sign. Lindemulder prescribed medicine to induce labor. Labor did not progress far that day. The following morning Maria received more medicine to induce labor. After 10 a.m. she began to experience hyperstimulation, in that

her uterus contracted too frequently.  The fetal heart rate decreased, then rebounded.  The fetus underwent further episodic decelerations, and Maria endured further hyperstimulation over the following hours.

Around 3:45 p.m. fetal heart decelerations, unrelieved by efforts to restore the heart rate, caused the nurse to alert Lindemulder.  When Lindemulder arrived he suggested use of forceps to deliver the fetus immediately.  Frank told Lindemulder not to use the forceps.  Lindemulder performed an emergency cesarean section.  He found the uterus ruptured.  At 4:10 p.m. he delivered Joseph through the rupture, at the site of the scar from the prior cesarean section.  Joseph showed almost no signs of life.

Joseph's pediatrician found that Joseph had suffered severe damage, largely due to lack of oxygen during the birthing process.  Joseph required constant care until he died in November 1998.

Maria and Frank, as individuals and on behalf of Joseph's estate, sued Lindemulder and his employer, Premier Healthcare Associates, in 2000.  They sought to recover for negligent failure to warn Maria of the risks of VBAC and of the risk to the fetus from undergoing the cesarean section instead of using forceps for faster delivery.  Plaintiffs also charged Lindemulder with negligent failure to deliver the fetus in a timely manner, either by cesarean section before 3 p.m. on March 28, 1997, or by

1-04-3217

forceps.  They claimed that Lindemulder's negligence caused Joseph's death.  In a separate count they sought to recover, on behalf of the estate, for Joseph's suffering during his short life.  The parties refer to the claim as a survival action because, under the provisions of the Probate Act of 1975 (755 ILCS 5/27-6 (West 2000)), the claim remains viable after the claimant's death.  Lindemulder answered that he fully complied with the standard of care, and plaintiffs acted with contributory negligence by denying his request for permission to use the forceps.

In Lindemulder's deposition plaintiffs' attorney pursued the theory that Lindemulder should have used the forceps to deliver Joseph sooner:

"Q.  Do you think that the use of forceps in a vaginal delivery *** would be considered a battery if you didn't get her consent?

A.  In a normal circumstance, no, but I was specifically forbidden by her husband *** as he [said] definitely, quote, unquote, I will sue you if you use them.

Q.  Did he say that to you?

A.  He said that quote, unquote."

At trial Maria testified that Lindemulder did not warn her of the risk of uterine rupture and neurological damage during VBAC.  Lindemulder did not inform her that he needed to use

forceps to save the baby's life; if he had so warned her, she would have told him to use the forceps.  Maria admitted that Lindemulder told Frank, in Maria's hospital room, that he wanted to use the forceps, and Frank answered that he preferred a cesarean section.  Maria testified that she made no response at all to the suggestion because Lindemulder never asked her whether she wanted him to use the forceps.

Lindemulder admitted at trial that he did not specifically recall discussing the risks of VBAC with Maria.  He swore that he had a standard procedure for informing any candidate for a VBAC of certain risks, which he listed at trial, including the risk of uterine rupture.  When he arrived to deliver the baby at 3:50 p.m. on March 28, 1997, he examined Maria and found the baby's head in position for a delivery with the aid of forceps.  He told her: "The heart tones are down.  *** [T]he baby needs to come out."  He told her he would use the forceps.  Frank then stepped between him and Maria and said, "I will kick your ass.  *** Just do a cesarean section."  Lindemulder said that he could deliver the baby in 2 minutes with the forceps, but a cesarean section would take 10 to 15 minutes.  Frank said, "No, I want a cesarean section."  Lindemulder went directly to Maria, at the side of her bed, and again stressed the need for immediate delivery, saying, "[L]et me use *** forceps right now.  The baby needs to come out."  He swore that Maria "closed her eyes, shook her head no and looked away."

Plaintiffs' attorney sought to impeach Lindemulder with his deposition testimony:

"Q.   Doctor, it is your testimony that Frank Strino said to you I'm going to kick your ass.  Is that right?

A.   Yes ***.

* * *

Q.   Now, in that [medical] record is there any memorialization of that?

* * *

A.   No, there's not.

Q.   I asked you about those conversations at your deposition, didn't I?

A.   I'm not sure you asked me about what Mr. Strino said.

Q.   Anywhere in this deposition did you tell me or any of the other lawyers there that Mr. Strino said that to you?

A.   You did not ask me that question.

[Defendants' counsel]:  That is not inconsistent.

***

THE COURT:  Objection sustained."

Plaintiffs' attorney made no further attempt to use the deposition testimony for impeachment.

Plaintiffs' expert testified that Lindemulder violated the

standard of care by giving Maria inadequate warnings about the medical procedures and by failing to deliver the baby by cesarean section much earlier on March 28, 1997, when the hyperstimulation and deceleration of the fetal heart indicated an increased risk due to the possibility of uterine rupture. Defendants' expert found that Lindemulder gave Maria all appropriate warnings and he followed correct procedures for delivering the baby. In particular, he said that Lindemulder appropriately informed Maria of the need for rapid delivery and the advisability of using forceps.

Defendants sought instructions concerning their theory that Frank acted as Maria's agent when he disallowed use of forceps. Plaintiffs objected that defendants had presented no evidence that could support a finding of agency. The court gave the pattern instruction for the jury to decide the issue of agency.

Plaintiffs asked the court to use a pattern instruction that provides:

"Before a [doctor] may [use forceps] upon a patient, the consent of the patient for the [use of forceps] must be obtained unless an emergency arises and treatment is required in order to protect the patient's health, and it is impossible or impracticable to obtain consent either from the patient or from someone authorized to consent for him. Whether there was such an emergency and whether it was impossible or

impracticable to obtain consent is for you to decide."

Illinois Pattern Jury Instructions, Civil, No. 105.07

(2005) (hereinafter IPI Civil (2005)).

The court refused the instruction, instead using the pattern instruction concerning informed consent.

Plaintiffs also objected to submission of a contributory negligence instruction for the defense against the estate's survival action.  The judge admitted some doubt as to "whether contributory negligence would apply to the survival action."  The judge said of the instruction:

"I guess we'll leave it in and we can sort it out

later.

* * *

*** [I]f I take your position and I find that in

*** the survival action that there was no contributory

negligence, and if I'm reversed on appeal, what's going

to happen is the defendant will receive a new trial.

But if we leave it in and research it and see what the

law is on that point, I really don't know at this

point."

The jury sent the judge several written questions during the lengthy deliberations.  The first question says:

"If we all agree on point D count 1 of the

plaintiff's complaint, but undecided about the other 3

points -- Does that fulfill finding the defend[a]nt

negligent, or must we resolve the other 3 points?" The record does not show the court's response. Next, the jury asked, "Is there a distinction between the defend[a]nts setting up the affirmative defense to the claim of negligence as opposed to be contrib[u]tory negligence. [*sic*]" The judge wrote back, without objection, "There is no real distinction. Contributory negligence is an affirmative defense for all practical purposes."

After almost a full day of deliberations, the jury wrote:

> "We have been deliberating intens[e]ly the same
> set of questions since this morning -- we voted early
> this morning and our most recent vote shows no progress
> to either side[.]  What do you advise?"

Over defendants' objection, the court read the jury the instruction our supreme court framed for deadlocked juries. See People v. Prim, 53 Ill. 2d 62, 75-76 (1972).

Later that evening the jury sent another note informing the court that they had made no progress. The last vote, late that night, informed the court that some jurors found plaintiffs' expert persuasive on the need for an earlier delivery, and the other jurors found defendants' expert persuasive.

The following afternoon, with deliberations ongoing after two full days, defendants' attorney moved for a mistrial. He argued that any verdict would likely reflect a compromise. Plaintiffs and their attorney remained silent. The judge denied the motion, but he decided to reread to the jury all of the

instructions.  At the outset of the rereading, he explained to the jury:

> "I'm going to read these things to you slowly and hope that you can digest it and maybe that's not even the question.
>
> I don't know what the problem is.  *** But at least we'll do that and see if that will help at all."

Later that day the jury returned a general verdict in favor of defendants.

## ANALYSIS

On appeal plaintiffs first argue that the court should have stricken Lindemulder's testimony that Frank told him not to use the forceps, and the court should not have instructed the jury on principles of agency, because defendants failed to present evidence that could support a finding that Frank acted as Maria's agent for medical decisions.  We review the court's decisions on the admission of evidence and jury instructions for abuse of discretion.

Plaintiffs rely primarily on Fettes, Love & Sieben, Inc. v. Simon, 46 Ill. App. 2d 232, 233-34 (1964), in which the court held:

> "Proof of the existence of the marital relation does not establish the husband's agency for his wife. The agency of the husband is a question of fact to be proved by direct or circumstantial evidence. There is

˘10˘

no presumption that the husband has authority to act
for the wife. In an action *** to hold [the wife]
responsible for the act *** of her husband, [the party
claiming agency] has the burden of showing the agency
and authority of the husband or a ratification by the
wife."

In another case involving the alleged agency of a husband
acting for his wife, the court elaborated:

"[A]gency may be established and its nature and extent
shown by circumstantial evidence, and reference may be
had to the situation of parties and property, acts of
parties, and other circumstances germane to the
question. ***

        ***

An agent's authority may be presumed from silence
of the alleged principal when he knowingly allows
another to act for him as his agent, and the agent's
scope of authority may be determined by what persons of
reasonable prudence, *** dealing with the agent, might
rightfully believe him to have on the basis of the
principal's conduct." Elmore v. Blume, 31 Ill. App. 3d
643, 647 (1975).

Here, Lindemulder testified that when he told Maria that he
needed to use forceps to deliver the baby immediately, Frank
intervened and asked him to perform the cesarean section instead.

Maria admitted she heard Frank make this request and she said nothing. A reasonable person might conclude from that silence in these circumstances that Maria implicitly authorized Frank to speak on her behalf. Lindemulder testified that when he asked her directly if he could use the forceps, "she shook her head no," ostensibly ratifying her husband's forceful request. We find that the defense presented sufficient evidence to create an issue of fact, for the jury to resolve, concerning Frank's authority to refuse the forceps procedure for Maria. The trial court committed no error by admitting into evidence Lindemulder's testimony regarding Frank's acts in the hospital. The court also correctly gave the pattern instructions on agency.

Next, plaintiffs challenge a ruling on cross-examination. Plaintiffs' counsel asked Lindemulder, "[I]n this deposition did you tell me *** that Mr. Strino said ['I will kick your ass'] to you?" Lindemulder answered, "You did not ask me that question." His attorney then objected that the evidence showed no inconsistency, and the court sustained the objection.

"If a witness fails to mention facts under circumstances which make it reasonably probable that he would mention them if true, the omission may be shown as an indirect inconsistency." Esderts v. Chicago, Rock Island & Pacific R.R. Co., 76 Ill. App. 2d 210, 228 (1966). The court should not allow the omission as impeachment unless the omission makes the prior statement materially inconsistent with the trial testimony. Tarin v.

1-04-3217

Pellonari, 253 Ill. App. 3d 542, 556 (1993).  We will not reverse a judgment based on a ruling on cross-examination unless the court abused its discretion and the ruling prejudiced the appellant.  McDonnell v. McPartlin, 192 Ill. 2d 505, 533 (2000).

Here, plaintiffs' counsel asked Lindemulder at the deposition if the use of forceps would have constituted a battery against Maria.  Lindemulder answered that it would not normally be a battery, but in this case Frank said "I will sue you if you use them."  To a following question of whether Frank actually said those words, Lindemulder answered, "He said that quote, unquote."  Lindemulder did not add that Frank also said "I will kick your ass."

Lindemulder recounted in the deposition Frank's words that had most bearing on the question counsel asked, concerning whether use of the forceps would count as a battery.  The following question only requested affirmation of whether Frank said he would sue.  Counsel never asked Lindemulder in the deposition to repeat verbatim every word Frank said when Lindemulder asked to use the forceps.  Thus, we cannot say that, if Frank had said "I will kick your ass," Lindemulder would have mentioned that fact in response to any question asked in the deposition.  We cannot say that the trial court abused its discretion by holding that Lindemulder's trial testimony was not materially inconsistent with his deposition testimony.

For their objections to other evidentiary rulings,

1-04-3217

plaintiffs offer bare argument without citation to any law.  We hold that plaintiffs waived the arguments by failing to cite applicable authority.  See 188 Ill. 2d R. 341(e)(7); <u>Dillon v. Evanston Hospital</u>, 199 Ill. 2d 483, 493 (2002).

Plaintiffs claim that the court should have given IPI Civil (2005) No. 105.07, which informs the jury that in certain emergencies a doctor may treat a patient without first obtaining consent.  The notes on use for the instruction state:

> "This instruction should not be given when the issue is informed consent and the cause of action is negligence.  This instruction should only be given when the cause of action is battery." IPI Civil (2005) No. 105.07, Notes on Use, at 284.

Plaintiffs ask us to ignore the notes, claiming, without citation, that the notes "are not authoritative law."  The proposition may surprise our supreme court, as that court has often cited the notes on use of pattern instruction as authority for proper use of the instructions.  <u>E.g.</u>, <u>Snelson v. Kamm</u>, 204 Ill. 2d 1, 31 (2003).  The trial judge here, following the notes on use, correctly decided not to give the instruction for implicit consent in battery cases, and instead gave the applicable instruction for informed consent in negligence cases.

According to plaintiffs, the trial judge committed reversible error in his responses to the jury's questions during the lengthy deliberations, and he should have granted a mistrial.

˘14˘

But plaintiffs did not, during deliberations, object to the judge's responses to any of the jury's questions. The failure to raise a timely objection to the responses to the jury's questions waives the issue for this appeal. Limanowski v. Ashland Oil Co., 275 Ill. App. 3d 115, 121 (1995). Plaintiffs also waived any claim of a right to a mistrial by failing to move for a mistrial before the jury returned the verdict. Redmond v. Socha, 216 Ill. 2d 622, 639-40 (2005).

If plaintiffs had requested other answers to the jury's questions during deliberations, the trial court would have had an opportunity to correct any error before the jury returned a verdict. And if plaintiffs had moved for a mistrial, the trial court could have considered grounds for the motion before the jury returned a verdict. Parties cannot harbor unspoken objections pending the jury's verdict and then use belated objections and motions for mistrial to get a second chance for a favorable verdict. Redmond, 216 Ill. 2d at 639. We will not reverse the judgment on the basis of the judge's responses to jury questions, given without objection, and we will not reverse the judgment for the defendants on the basis of the court's denial of the defendants' motion for mistrial, where plaintiffs did not join the motion for mistrial.

Finally, plaintiffs argue that the court should have sustained their objection to the contributory negligence instruction in the survival action. Defendants argue that, under

˘15˘

1-04-3217

the "two issue" rule (<u>Nimetz v. Cappadona</u>, 596 A.2d 603, 607 (D.C. 1991)), plaintiffs waived this issue because plaintiffs did not request a special interrogatory that would have clarified the basis for the verdict in the survival action.  In general:

"[W]here there are two causes of action, or two defenses, thereby raising separate and distinct issues, and a general verdict has been returned, and the mental processes of the jury have not been tested by special interrogatories to indicate which of the issues was resolved in favor of the successful party, it will be presumed that all issues were so determined; and that, where a single determinative issue has been tried free from error, error in presenting another issue will be disregarded."  <u>H.E. Culbertson Co. v. Warden</u>, 123 Ohio St. 297, 303, 175 N.E. 205, 207 (1931).

Illinois courts, like the courts of most states (see <u>Nimetz</u>, 596 A.2d at 607 (and cases cited therein)), have adopted the "two issue" rule.  <u>Witherell v. Weimer</u>, 118 Ill. 2d 321, 329 (1987); <u>Krklus v. Stanley</u>, 359 Ill. App. 3d 471, 479 (2005).  The rule applies to errors in instructions, and the Ohio Supreme Court applied it to a case in which a plaintiff who sued in negligence objected to a contributory negligence instruction.  <u>Knisely v. Community Traction Co.</u>, 125 Ohio St. 131, 137, 180 N.E. 654, 656 (1932).  The court refused to address the issue on appeal because, in the absence of a special interrogatory, the court

could not determine whether the jury found in the defendant's favor on the negligence issue. If the jury so found, any error in the contributory negligence instruction would have had no effect on the verdict.

Here, too, defendants presented evidence that Lindemulder did not act negligently, along with evidence that Maria and Frank acted with contributory negligence. If the jurors decided in defendants' favor on the negligence issue, they had no need to decide the contributory negligence claim. Because neither party submitted special interrogatories, we cannot determine from the general verdict whether any error in the contributory negligence instruction affected the verdict. Accordingly, we hold that the alleged error in allowing the jury to consider contributory negligence as a defense to the survival action does not warrant reversal of the judgment here.

Maria's acts when she heard Frank respond to Lindemulder's suggestion of using forceps can support an inference that she permitted Frank to act as her agent for purposes of medical decisions. The trial judge did not abuse his discretion by admitting Lindemulder's testimony concerning Frank's response. The judge also did not abuse his discretion by sustaining defendants' objection to the single question plaintiffs asked Lindemulder about his deposition. The judge correctly gave the pattern instruction on agency and denied the pattern instruction on consent designed for cases in which the plaintiff charges a

1-04-3217

medical professional with battery rather than negligence. Plaintiffs waived other evidentiary objections for this appeal by failing to cite relevant authority. They waived any issue concerning responses to jury questions by failing to object at trial. Their failure to move for mistrial forecloses them from charging the court with reversible error for failing to declare a mistrial. We cannot determine whether the instruction on contributory negligence in the survival action had any prejudicial effect because, without a special interrogatory, we cannot determine whether the jury decided in defendants' favor based on their expert's testimony that they committed no negligence. Accordingly, we affirm the trial court's judgment.

Affirmed.

TULLY and O'MALLEY, JJ., concur.