2020 IL App (1st) 191042-U
No. 1-19-1042

SECOND DIVISION
May 19, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| WHIRLPOOL CORPORATION, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
|     Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 15 L 7631 |
| | ) | |
| FAEGRE DRINKER BIDDLE & REATH LLP | ) | |
| and WILLIAM RANDOLPH RUCKER, | ) | The Honorable |
| | ) | Daniel J. Kubasiak, |
|     Defendants-Appellees. | ) | Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Smith and Justice Coghlan concurred in the judgment.

**ORDER**

¶ 1      *Held:*    Where the jury returned a general verdict, no special interrogatories were submitted that tested the basis of the jury's verdict, defendants presented multiple defenses, and plaintiff did not contest the sufficiency of the evidence on those defenses, the two-issue rule precluded consideration of plaintiff's claims of error.

¶ 2      Plaintiff, Whirlpool Corporation, appeals from a jury's verdict in favor of defendants,

Faegre Drinker Biddle & Reath LLP ("FDBR")[1] and William Randolph Rucker, on plaintiff's

_____

[1] At the time plaintiff filed its complaint and at the time of trial, FDBR had not yet been formed. Rather, plaintiff named Drinker Biddle & Reath LLP as a defendant. Later, in February 2020,

claims of legal malpractice. On appeal, plaintiff argues that the trial court erred in (1) giving a jury instruction on the "informed judgment" defense, (2) granting defendants summary judgment on certain elements of damages, and (3) limiting the testimony of plaintiff's liability expert. For the reasons that follow, we affirm.

¶ 3                                BACKGROUND

¶ 4        Certain facts in this case are undisputed. Plaintiff is a large manufacturer of home appliances. On September 7, 2010, the U.S. Department of Commerce ("Commerce") issued new preliminary determinations announcing new antidumping and countervailing duties[2] ("AD/CV duties") on certain aluminum extrusions imported from China. Upon learning of this new preliminary determination, Jonathan Fowler, a Customs Analyst with plaintiff, emailed Rucker, a partner with FDBR, requesting an opinion on whether certain aluminum door handles plaintiff imported from China would be subject to the AD/CV duties announced in the preliminary determination. In requesting that opinion, Fowler noted that the language of the preliminary determination was "quite broad" and noted that interpreting the language could be "a bit challenging." Two days later, Rucker responded that he believed that the handles were not subject to duties under the preliminary determination, because they fell under the "finished merchandise" exclusion for "finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry." Rucker concluded that the handles at issue fell under this exclusion because they were final, finished door handles at the time of importation.

_____

Drinker Biddle & Reath LLP merged with Faegre Baker Daniels LLP, forming FDBR. Subsequently, we granted defendants' "Motion to Recognize Change of Name" and amended the caption of this matter to reflect FDBR's new name.
[2] Antidumping duties are duties imposed on foreign imports that are priced below fair market value. Countervailing duties are duties imposed to counteract government subsidies provided by the exporting country on the product.

¶ 5   Shortly after Rucker provided his opinion to plaintiff, Senior Procurement Manager Joseph DeFrancesco provided Rucker with additional details regarding the manufacturing process for the handles and asked if these details affected Rucker's analysis. Rucker responded that he still believed that the handles were outside the scope of the preliminary determination. He stated:

> "In an ADD/CVD investigation, the scope language is always drafted broadly so that it can be construed to cover more goods than intended (i.e., 'over-inclusive'). A comparison of the handles' physical properties and manufacturing processes against the scope language does raise a question whether such articles are covered. Based upon our analysis, however, we have concluded that the handles you describe are not subject to the investigation."

Rucker also emailed Fowler to notify him of the response Rucker had sent to DeFrancesco. In that email, Rucker stated that plaintiff was "good to go" with respect to importing the handles without flagging them for AD/CV duties.

¶ 6   In May 2011, Commerce issued its final determination and orders on the aluminum extrusions duties. In response to an email from DeFrancesco about these orders, Rucker stated that although the scope of the orders had "changed slightly" from the preliminary determination, it had not done so in any way that would affect plaintiff's handles. As a result, Rucker stated, his original opinion that the handles were excluded from the duties remained unchanged.

¶ 7   Between 2010 and May 2012, plaintiff continued to import the handles without paying any AD/CV duties. On May 3, 2012, U.S Customs & Border Protection ("Customs") flagged one of plaintiff's shipments of handles as being subject to the AD/CV duties, which required

plaintiff to pay duty deposits of 407% of the value of the handles. Plaintiff reached out to Rucker regarding this, and Rucker responded:

> "As discussed over the past few days, based on recent developments regarding the interpretation of the antidumping and countervailing duty orders on aluminum extrusions from China and recent actions by U.S. Customs and Border Protection, it appears that Whirlpool's aluminum appliance handles may be considered to be within the scope of these orders. As a result, ADD/CVD deposits may be due on entries of these goods going back to September 2010."

Rucker then went on to suggest a number of actions plaintiff could take to mitigate plaintiff's potential exposure, including but not limited to participating in administrative review proceedings to reduce the AD/CV duty rates, filing a prior disclosure to avoid penalties, and requesting a scope review for the exclusion of the handles from the AD/CV duties.

¶ 8    Plaintiff then retained new counsel and instituted scope review proceedings, which were ongoing and unresolved at the time of trial. Plaintiff also instituted administrative review proceedings, which reduced the duty rates from the 407% deposit rate to a final rate of approximately 16% of the handles' value.

¶ 9    During this time, after Customs had flagged plaintiff's handle shipments in 2012, plaintiff began to re-source the purchase of its handles to North American manufacturers.

¶ 10    Plaintiff filed its complaint in this action on July 28, 2015. In that complaint, plaintiff alleged that Rucker and FDBR committed legal malpractice in the following ways: failing to review and analyze the relevant information available at the time Rucker issued his 2010 advice; failing to competently analyze the factual and legal questions presented; unequivocally advising that the handles were not subject to the preliminary determination; failing to advise plaintiff that

the conclusion the handles were not within the scope of the preliminary determination was subject to considerable doubt and uncertainty; failing to advise plaintiff that it could or should seek a scope review to determine whether the handles were subject to the AD/CV duties; and providing inadequate and erroneous legal advice to plaintiff.

¶ 11        Prior to trial, defendants moved for summary judgment, arguing that the "informed judgment"[3] defense precluded plaintiff's claims of legal malpractice. According to defendants, under the informed judgment defense, where the state of the law is unsettled at the time the advice is given and the advice is an exercise of the attorney's informed judgment, then, as a matter of law, the attorney's actions cannot be considered negligent. In response, plaintiff argued that the informed judgment defense is just another way of recognizing that where an attorney could not be found to have been professionally negligent, the trial court could rule on the issue as a matter of law. Because, plaintiff argued, there existed questions of fact regarding whether defendants were negligent in their advice to plaintiff, the informed judgment defense was unavailable to defendants. In addition, plaintiff argued that the law was not unsettled as it related to the handles.

¶ 12        At the same time, defendants filed a motion for summary determination with respect to three elements of damages claimed by plaintiff. The first was a claim for lost sales and expedited shipping on the "687" handle. The 687 handle was not one of the handles imported from China. Rather, it was always manufactured in North America. Plaintiff claimed that because it was forced to quickly localize the manufacture of the handles it would have otherwise purchased from China, its buffer of extra handles was quickly eliminated and its local

---

[3] Throughout caselaw, the record, and the parties' briefs, this defense/rule is also referred to as the "attorney judgment defense," "informed judgment defense," and "judgment immunity defense." For the sake of consistency, we will refer to it solely as the informed judgment defense.

manufacturers were required to dedicate some of their capacity to making the handles that would have previously been imported from China. As a result, the capacity for manufacturing the 687 was reduced and plaintiff lost sales when it experienced an unexpected spike in demand for appliances that incorporated the 687 handles but could not keep up.

¶ 13 Second was a claim for price differential damages that plaintiff argued it sustained when one of its suppliers leveraged its role in the administrative review proceedings instituted by plaintiff in order to obtain a higher price for its product. The third element of damage defendants sought to preclude was the increased shipping costs plaintiff paid to import handles from China from 2010 to 2012. Plaintiff claimed that had defendants not been negligent in their advice, it would have re-sourced the handles to North America immediately in 2010, thereby avoiding the higher shipping costs from China.

¶ 14 Defendants argued in their motion for summary determination that their alleged negligence was not the cause in fact or legal cause of these elements of damages, these damages were not reasonably foreseeable, and plaintiff could not prove these damages. Plaintiff disputed defendants' contentions on all grounds.

¶ 15 After a hearing on defendants' motion for summary judgment and motion for summary determination, the trial court issued a written decision. In that decision, the trial court denied defendants' motion for summary judgment, finding that although the law was unsettled on the inclusion of the handles in the scope of the preliminary determination, there remained a genuine issue of material fact with respect to whether Rucker exercised an informed judgment. The trial court granted defendants' motion for preliminary determination in part and denied it in part. More specifically, the trial court granted defendants' motion on the claims of lost sales and price differential damages because defendants' alleged negligence was not the cause of these damages;

however, the trial court denied defendants' motion on the increased shipping costs, finding that there existed a genuine issue of material fact on that issue.

¶ 16  The jury trial in this matter spanned two full weeks. In addition to the evidence establishing the undisputed facts discussed above, the relevant evidence presented at trial was as follows. Christy McMunn Daugherty, plaintiff's Director of International Logistics and Logistics Engineering testified that in 2010 and 2012, she was the Senior Manager of Customs Compliance. After being notified that Customs had flagged one of plaintiff's handle shipments, plaintiff's plan was to re-source the handles out of China to North America if it was ultimately determined that they fell within the scope of the AD/CV duties. Daugherty testified that plaintiff would have re-sourced the handles in 2010 if plaintiff had known the handles were within the scope of the preliminary determination, but then later acknowledged that the decision of whether to continue to import the handles from China in 2010 belonged to plaintiff's procurement department, not her department. She also acknowledged that she had previously testified that she did not know what plaintiff would have done if it had received different information from defendants in 2010, because that decision belonged to the procurement department.

¶ 17  She further testified that as a result of the handles from China being flagged by Customs, plaintiff was required to pay deposits of 407% of the value of the handles. Ultimately, the duty rate was set at 16%, and the difference between the final duty rate and the 407% deposited would be refunded to plaintiff, although, at the time of trial, the excess had not yet been refunded.

¶ 18  She acknowledged that plaintiff had a four-point procedure for what to do when it was faced with a situation where it was unclear whether a product was subject to AD/CV duties. Those points included contacting one or more of plaintiff's licensed customs brokers, which included Daugherty; contacting plaintiff's internal government affairs personnel who specialized

in international trade; consulting external legal counsel; and filing a request for a scope determination with Commerce. She testified that Fowler reached out to her about the preliminary order but that she did not provide him with an interpretation. No one reached out to plaintiff's government affairs employee, Sara Bovan. Finally, plaintiff did not seek a scope review. Daugherty testified that none of these steps were taken because plaintiff felt that it had obtained certainty on the issue from defendants. At no point did Daugherty communicate to the procurement department that defendants' opinion on the scope of the preliminary determination was not a guarantee, nor did she recall communicating to the procurement department that Commerce might reach a different conclusion than defendants.

¶ 19      Attorney Christopher Dunn testified as plaintiff's liability expert. He testified that, in his opinion, Rucker did not exercise reasonable care and skill in advising plaintiff. More specifically, he opined that Rucker's interpretation of the final finished merchandise exclusion was inconsistent with the scope definition found in the preliminary determination, Rucker's conclusion that the handles fell within the final finished merchandise exclusion was erroneous, and Rucker's level of certainty in his conclusion violated the applicable standard of care. Dunn testified that a reasonable attorney would have spent more time reading and carefully comparing the language of the preliminary determination and would not have definitively concluded that the handles were outside the scope of the preliminary determination or have advised the client that they were definitively outside the scope. Finally, Dunn testified that Rucker should have advised plaintiff of the possibility of obtaining a scope review.

¶ 20      Plaintiff also attempted to elicit testimony from Dunn that Rucker's opinion was inconsistent with other language in the preliminary determination, but the trial court barred that testimony on grounds that it was not properly disclosed prior to trial.

¶ 21       On cross-examination, Dunn acknowledged that the Commerce determinations and orders on aluminum extrusions from China have required an unusual amount of construction by courts and administrative agencies. In fact, he could not think of another AD/CV duties order that resulted in more challenges. He also acknowledged that he did not know what materials Rucker had reviewed or read in reaching his conclusions, so he was not offering an opinion that Rucker should have read something else.

¶ 22       Rucker testified next as an adverse witness. He testified that in preparing the opinion for plaintiff, he reviewed all of the information provided by plaintiff, compared the handles to the language of the preliminary determination, reviewed Commerce's and the International Trade Commission's websites, and read the relevant Federal Register notices. Based on this information, he concluded that the handles fell within the finished merchandise exclusion because they were finished and complete handles at the time of importation. Because they fell within that exclusion, they were not within the scope of the AD/CV duties imposed by the preliminary determination and subsequent orders.

¶ 23       Although Rucker was confident in his interpretation of the preliminary determination, that did not mean there was no risk that AD/CV duties might be levied against the handles, and plaintiff would have known that because it is a sophisticated importer. Because scope reviews are not available until a final determination is issued by Commerce, Rucker did not mention the possibility of a scope review in his opinion. Moreover, plaintiff was aware of the availability of scope reviews. He knew this because just a few months before giving his opinion on the preliminary determination, he had participated in training some of plaintiff's employees on the availability of scope reviews from Commerce. Also based on his experience training them, Rucker believed plaintiff's employees to be well-versed in the area of AD/CV duties.

¶ 24    In May 2012, after plaintiff's shipment had been flagged by Customs, Rucker advised plaintiff that based on developments and government interpretations of the application of AD/CV duties to aluminum extrusions from China, the handles could now be considered to fall within the scope of the duties. He testified that his personal opinion on the language of the preliminary determination had not changed; it was just different than the government's.

¶ 25    Elizabeth Door, plaintiff's Senior Vice President for Global Strategic Sourcing, testified that in 2012, she was responsible for purchasing components for plaintiff's North American region. She did not work for plaintiff in 2010, but was aware that following defendants' advice on the scope of the preliminary determination, plaintiff continued and even increased its handle imports from China.

¶ 26    Upon learning that duties would be imposed on the handles imported from China, plaintiff estimated the final duty rate would be approximately 41%. Because plaintiff was unwilling to pay this amount on the handles, it immediately began to re-source its handles to two North American suppliers—one in the U.S. and one in Canada.

¶ 27    Ron Maurer testified that at the time of trial, he was plaintiff's Director of Finished Product Sourcing, but in 2010, he was plaintiff's Global Steel Director, and in 2012, he was the Director of Basic Technologies. In 2012, after learning that the handles imported from China had been flagged for duties, he recommended that if the handles were, in fact, held to be within the scope of the duties, plaintiff should re-source the handles to North America as soon as possible, which plaintiff ultimately did.

¶ 28    Although he was aware that in 2010, DeFrancesco had recommended that plaintiff localize the handles if they fell within the scope of the preliminary determination, he had no idea whether plaintiff would have followed that recommendation if it had received different advice

from defendants. Likewise, he did not know what, exactly, plaintiff would have otherwise done in 2010 if defendants had given different advice.

¶ 29 James Malackowski testified as plaintiff's damages expert. According to him, because of defendants' advice to plaintiff, which resulted in plaintiff continuing its import of handles from China rather than resourcing the handles to North America in 2010, plaintiff sustained damages in the form of higher shipping costs, duties, and additional legal expenses. More specifically, the cost of shipping the handles from China to the U.S. was more than what it would have been to ship the handles within North America. This resulted in damages in the amount of $1,383,139. Plaintiff also was ultimately required to pay duties on the handles imported after 2010, totaling approximately $1,824,435. Finally, plaintiff had to pay additional legal fees to its new counsel, Chinese counsel, and consultants to seek scope reviews and administrative review of the duty rates. These fees totaled $6,843,035. In all, Malackowski calculated plaintiff's damages to total $10,050,609.

¶ 30 Attorney Donald Harrison testified that he was retained by plaintiff in 2012 to assist it in addressing AD/CV duties on the handles. In particular, he and his firm filed a prior disclosure on behalf of plaintiff, convinced Customs to limit the amount of the required duty deposits, limited the value of the product on which duties were imposed, and sought a scope review on whether the handles were subject to the duties. He testified that all of the work he performed was necessary and that the amounts billed to plaintiff were reasonable. In addition, he testified that if plaintiff had re-sourced the production of the handles in 2010, the total necessary legal expenses would only have been approximately $250,000.

¶ 31 At the close of plaintiff's evidence, defendants moved for a directed verdict. In doing so, they argued that plaintiff had failed to present any evidence that Rucker's judgment was not

informed, the substance of his advice was not unreasonable, and plaintiff failed to present evidence of what it would have done had Rucker expressed more uncertainty about his interpretation. The trial court denied defendants' motion.

¶ 32     Attorney Kristin Mowry testified as defendants' liability expert. She testified that Rucker examined all of the correct materials in forming his interpretation of the preliminary determination and that his ultimate opinion and his communications with plaintiff were reasonable and satisfied the applicable standard of care. She found Rucker's conclusion that the handles were finished goods and thus excluded was reasonable. Mowry also testified that it was not necessary for Rucker to advise plaintiff that it could seek a scope review, because plaintiff already knew about scope reviews and because a scope review would not have been an option until a final determination was issued by Commerce. In addition, Mowry did not believe that Rucker's opinion was inappropriately certain, as he told them in a subsequent email that the language of the preliminary determination did raise a question of coverage and he followed the correct processes in reaching his conclusion.

¶ 33     Mowry explained that the preliminary determination and the subsequent final orders were bombshells in the trade industry, having produced many scope rulings and being interpreted by the authorities more broadly than anyone anticipated. She testified that the average number of scope rulings on a determination is five, but that there had been 110 on the aluminum extrusions determination. Most of those rulings dealt with the finished merchandise and finished goods exclusions, and many of them were inconsistent with each other. According to Mowry, the fact that Customs did not flag plaintiff's handle shipments until 18 months after the preliminary determination was issued was an indicator that even Customs did not view plaintiff's handles to be subject to the AD/CV duties.

¶ 34    She also opined that the fees charged by Harrison and his firm for the work they performed for plaintiff were "astronomically unreasonable."

¶ 35    Attorney Daniel Schlessinger testified as an expert on tolling agreements. He testified that there were two general types of agreements to toll statutes of limitations: (1) agreements where the time during which the agreement is in effect does not count toward the running of the statute of limitations or is added to the end of the statute of limitations, and (2) agreements where the statute of limitations cannot expire during the term of the agreement, but upon expiration of the agreement, the statute of limitations applies as if the agreement never existed. In his opinion, the parties' tolling agreement was the second type.

¶ 36    Finally, Timothy Hart testified as a damages expert for defendants. First, Hart testified that Malackowski's analysis was flawed because it did not account for the difference in handle prices between the U.S. and China. Because the price of handles in China was so much less than the price of handles in the U.S., the increased shipping rates from China and the duties imposed were offset, such that plaintiff actually saved money by continuing to purchase its handles from China in 2010 through 2012. According to his calculations, plaintiff saved $1,440,000 by postponing the localization of the handle production until 2012.

¶ 37    Second, according to Hart, because the federal government was required to pay interest on the duty deposits plaintiff had made, plaintiff earned more money having that money held by the government than it would have if it had simply held the money itself. More specifically, Hart calculated that plaintiff had earned over $921,000 in profits on the duties deposits plaintiff had made with the federal government.

¶ 38    Finally, he opined that the legal expenses that plaintiff expended outweighed the quantifiable benefits realized from the legal work performed by Harrison. Hart calculated that

plaintiff spent $760,602 on legal fees related to the scope reviews instituted by Harrison, but only realized a financial benefit of $388,821 as a result of Harrison's success in having a subset of the handles excluded from the AD/CV duties. Hart also asserted that plaintiff spent $5,700,000 in legal fees on the administrative review proceedings related to reviewing the duty rates, but only realized a savings of $3,122,722 by the reduction of rates from an estimated 43% to the actual 16%.

¶ 39     Upon the conclusion of their evidence, defendants renewed their motion for a directed verdict. This time, defendants made six arguments: (1) plaintiff failed to present any evidence that Rucker's judgment was not informed; (2) plaintiff failed to establish that defendants' alleged negligence caused its injuries, because there was no evidence of what plaintiff would have done if Rucker gave it different or less certain advice in 2010; (3) plaintiff's claims were barred by the statute of limitations; (4) plaintiff's claimed damages needed to be offset by the money saved on the reduced price of the handles from China and by the interest earned on the duties deposits; (5) defendants could not be found liable based on alleged acts of negligence that were not supported by expert testimony; and (6) defendants could not be liable for a court's or agency's unforeseeable errors.

¶ 40     Plaintiff also made a motion for directed verdict on defendants' defenses. Plaintiff argued that defendants had not presented any expert evidence of contributory negligence on the part of plaintiff and that there was no evidence of the parties' intent in entering into the tolling agreement.

¶ 41     The trial court denied plaintiff's motion for directed verdict but reserved ruling on defendants' motion pending the jury's verdict.

¶ 42    In closing arguments, plaintiff argued that it was required to demonstrate that Rucker violated the standard of care by failing to act as a reasonably careful attorney in his field would have. Plaintiff argued that a reasonably careful attorney would have advised the client that the law regarding the application of the AD/CV duties to the handles was unsettled, would not have advised the client with as much certainty as Rucker did, and would not have misread the preliminary determination as Rucker did. Plaintiff also argued that an attorney's judgment could not be considered informed if the attorney did not exercise reasonable care and skill. Plaintiff asserted that Rucker's false certainty deprived it of the opportunity to make an informed decision about whether to continue importing handles from China and that it would not have continued to import handles from China if it had known that duties would be imposed on them.

¶ 43    Defendants, on the other hand, argued that they could not be found to have committed malpractice if Rucker made an informed judgment. They argued that Rucker reviewed all of the materials he could have and that no one offered any evidence that he should have reviewed anything else. They also argued that he gave a reasoned opinion on the interpretation of the preliminary determination and that no one viewed his opinion as off-base or outrageous. For those reasons, defendants contended, Rucker's judgment was informed and they could not be found liable for malpractice. Even putting aside the informed judgment defense, defendants argued that Rucker's conclusion that the handles fell within the finished merchandise exclusion was otherwise reasonable. Moreover, according to defendants, plaintiff was aware that the issue of whether the handles were subject to the duties was unclear and that Rucker's opinion did not bind the government.

¶ 44    In addition, defendants argued that plaintiff was contributorily negligent by failing to follow its own policies and procedures. Specifically, defendants pointed out that Daugherty did

not review the preliminary determination, no one contacted plaintiff's governmental affairs personnel, plaintiff did not seek a scope ruling, and plaintiff's customs department did not communicate to the procurement department that Rucker's opinion was not a guarantee and that Commerce could still reach a different conclusion.

¶ 45    Defendants also argued that plaintiff's claims were barred by the statute of limitations, plaintiff did not suffer any damages when one took into account the reduced price of handles from China and the interest earned on the duties deposits, the additional legal fees were unreasonable, and plaintiff failed to present any evidence of what it would have done in 2010 if Rucker had informed it that he was unsure whether the handles fell within the scope of the preliminary determination.

¶ 46    After deliberations, the jury returned a verdict in favor of defendants and against plaintiff.

¶ 47    Following an unsuccessful posttrial motion, plaintiff instituted this appeal.

¶ 48                                ANALYSIS

¶ 49    On appeal, plaintiff argues that the trial court erred in (1) giving a jury instruction on the "informed judgment" defense, (2) granting defendants summary judgment on certain elements of damages, and (3) limiting the testimony of Dunn.  We conclude that reversal is not warranted based on any of these contentions.

¶ 50    As an initial matter, we pause to commend the trial court on its handling of this case.  The record on appeal is over 13,000 pages and throughout the record, the trial court exhibited great patience with the parties and a thorough understanding of the many issues and complicated facts presented in this case.

¶ 51    Plaintiff's first contention on appeal is that the trial court erred in instructing the jury on the informed judgment defense.  Even assuming that plaintiff is correct that the trial court so

erred, the two-issue rule precludes any conclusion that such an error resulted in the jury's verdict in favor of defendants. Under the two-issue rule, where the jury returns a general verdict, multiple claims or defenses were presented to the jury, and the challenging party did not request a special interrogatory that would test the basis of the jury's verdict, the verdict will be upheld so long as there was sufficient evidence to support any one of the presented claims or defenses. *Lazenby v. Mark's Construction, Inc.*, 236 Ill. 2d 83, 101 (2010); *Strino v. Premier Healthcare Associates, P.C.*, 365 Ill. App. 3d 895, 904 (2006). In such a situation, the challenging party must demonstrate that the jury's verdict cannot be sustained on any basis. See *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 492 (2002) (where the matter was submitted to the jury on several theories of negligence, no special interrogatories were requested, a general verdict was returned, and the defendants failed to challenge the verdict on all grounds, the judgment would not be disturbed based on the defendants' claim of error related to only one of the theories of negligence); *Guy v. Steurer*, 239 Ill. App. 3d 304, 307 (1992) (where the jury's verdict could have been based on three separate grounds, to sustain his claim that the verdict was against the manifest weight of the evidence, the plaintiff was required to demonstrate that the evidence did not support any of the three grounds). In other words, unless plaintiff can show that the jury's verdict cannot be sustained on any of the other defenses presented to the jury, we must conclude that any error in giving the informed judgment defense instruction was harmless.

¶ 52    Here, defendants defended against plaintiff's claims of malpractice on the bases that Rucker rendered an informed judgment, Rucker's opinion otherwise satisfied the applicable standard of care, plaintiff was contributorily negligent, and plaintiff failed to prove causation.[4]

---

[4] Defendants also argued that plaintiff's claim was barred by the statute of limitations. Because, however, the jury was instructed to address the issue of the statute of limitations only if it found that plaintiff had carried its burden of proof on all elements of its claim but used Verdict Form C,

The jury returned a general verdict in favor of defendants and no special interrogatories were submitted to the jury that would reveal the basis of the verdict. Accordingly, under the two-issue rule, to be entitled to relief on appeal, plaintiff must demonstrate that none of these bases support the jury's verdict. Despite this, plaintiff makes no argument whatsoever on appeal that the jury's verdict cannot be sustained on the bases that Rucker's opinion satisfied the general standard of care, even without considering the informed judgment defense, defendants did not cause plaintiff's claimed injury, and plaintiff was contributorily negligent. See Ill. S. Ct. R. 341(h)(7) (eff. Nov. 1, 2017) (requiring that the argument section of appeals briefs "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"); *Sakellariadis v. Campbell*, 391 Ill. App. 3d 795, 804 (2009) ("The failure to assert a well-reasoned argument supported by legal authority is a violation of Supreme Court Rule 341(h)(7) [citation], resulting in waiver."); *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986) ("A reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented. The appellate court is not a depository in which the appellant may dump the burden of argument and research.").

¶ 53        Rather, plaintiff makes several arguments that the two-issue rule does not apply in this case. First, plaintiff argues that the rule does not apply because defendants' defense focused primarily on their contention that Rucker's advice constituted an informed judgment and, thus, could not be considered negligent. In support of this position, plaintiff cites to various portions of defendants' closing argument in which defense counsel argued that defendants could not be

_____

which it was instructed to use only if it found in favor of defendants or if plaintiff was more than 50% contributorily negligent, we presume that the jury did not reach the issue of the statute of limitations.

found to be liable if the jury found that Rucker's judgment was informed. According to plaintiff, because defendants repeatedly argued that to determine whether defendants were negligent, the jury only needed to decide whether Rucker's judgment was informed, they cannot now argue that the jury had to decide multiple issues to determine whether defendants were negligent.

¶ 54    Plaintiff's argument is misplaced. Defendants' contention is not that the jury had to decide multiple issues to reach its verdict, but that any of the issues presented to the jury were sufficient to sustain a verdict in defendants' favor. Moreover, application of the two-issue rule is not dependent on whether the jury was required to decide multiple questions to reach its ultimate determination of liability. Rather, it applies when several independently sufficient bases for the verdict were presented to the jury and there is no way to determine which basis the jury relied on, as is the case here. The questions of whether Rucker violated the standard of care, plaintiff was contributorily negligent, or defendants' alleged negligence caused plaintiff's claimed injury were all presented to the jury. A finding in defendants' favor on any one of these questions would necessitate a defense verdict. The fact that defendants might have focused more heavily on one of these questions in making their closing argument does not change the fact that all of them were presented to the jury and that the jury was free to base its verdict on any one of them.

¶ 55    Plaintiff also argues that the two-issue rule does not apply because a special interrogatory on the issue of whether Rucker's judgment was informed would not have been appropriate. Prior to trial, defendants requested a special interrogatory asking the jury whether it found Rucker's opinion to constitute an informed judgment. Plaintiff objected to the giving of that special interrogatory, arguing that special interrogatories can only be given on dispositive issues, and whether an attorney's advice constituted an informed judgment is not dispositive, because the jury must still determine whether the attorney acted with as a reasonably careful attorney would.

After arguments by the parties, the trial court denied the special interrogatory without explanation. Plaintiff now contends on appeal that the trial court adopted its position that the question of whether an attorney's advice constituted an informed judgment is not dispositive and thus not the proper subject of a special interrogatory.

¶ 56 As an initial matter, we note that although the two-issue rule was raised and argued in the trial court during proceedings on plaintiff's posttrial motion, and although plaintiff preemptively addressed the two-issue rule in its opening brief on appeal, plaintiff only made the argument that a special interrogatory on the informed judgment defense would have been improper for the first time in its reply brief. For that reason, this contention is waived. See Ill. S. Ct. R. 341(j) ("The reply brief, if any, shall be confined strictly to replying to arguments presented in the brief of the appellee ***."); *Monical v. State Farm Insurance Co.*, 211 Ill. App. 3d 215, 225 (1991) (arguments not raised in the trial court or in the initial appellate brief may not be raised for the first time in a reply brief and are waived).

¶ 57 Even putting waiver aside, however, we disagree with plaintiff that it could not request a special interrogatory on the informed judgment defense for purposes of testing the basis of the jury's verdict. We understand that it is plaintiff's general position that the informed judgment defense is subservient to the general legal malpractice standard of care, *i.e.*, even if an attorney renders an informed judgment, he or she must nevertheless have also acted with reasonable care and skill. Even assuming that is, in fact, an accurate assessment of the law, the purpose of a special interrogatory in this context is to determine the basis of the jury's verdict. As the jury was instructed, however, a finding that Rucker's judgment was informed was the equivalent to finding that he exercised reasonable care and skill. The jury instruction on this issue read:

"An attorney is liable to his client only when he fails to exercise a reasonable degree of care and skill; he is not liable for mere errors of judgment. It would be an error in judgment and not professional negligence[] if Mr. Rucker offered an informed judgment about an unsettled question of law.

As such, where an area of law is unsettled, *an informed professional judgment made with reasonable care and skill cannot be professional negligence.* It has already been determined that Mr. Rucker and Drinker Biddle were advising Whirlpool on an unsettled area of law.

It is for you to decide whether or not Drinker Biddle and Mr. Rucker acted reasonably and advised Whirpool with the exercise of an informed judgment. *When I use the phrase 'informed judgment,' I mean a judgment made with reasonable care and skill, considering the relevant legal principles and facts at issue.*" (Emphasis added.)

The emphasized language of the instruction requires that an informed judgment be one that was made with reasonable care and skill. Accordingly, if the jury were to have found that Rucker exercised an informed judgment, it necessarily would have also found that he exercised reasonable care and skill in reaching that judgment. In turn, if he exercised reasonable care and skill in reaching that judgment, he satisfied the general standard of care that plaintiff claims he was required to satisfy. Thus, as the jury was instructed, the question of whether Rucker exercised an informed judgment could be dispositive and was a proper subject of a special interrogatory. Accordingly, plaintiff's contention that the two-issue rule does not apply in this case because the informed judgment defense could not be dispositive fails.

¶ 58    Plaintiff next argues that defendants conflated the issues of proximate causation and contributory negligence, failed to distinguish the two principles for the jury, and failed to identify

any proximate cause of plaintiff's damages other than plaintiff's contributory negligence. Even assuming that plaintiff is correct in these contentions, plaintiff fails to offer any argument or explanation as to how these contentions relate to our analysis of the two-issue rule. Plaintiff also fails to cite any authority in support of these contentions. Therefore, plaintiff has forfeited them. See Ill. S. Ct. R. 341(h)(7); *Sakellariadis*, 391 Ill. App. 3d at 804; *Thrall Car Manufacturing Co.*, 145 Ill. App. 3d at 719.

¶ 59     Finally, plaintiff argues that the jury could not have found for defendants based on contributory negligence because it returned Verdict Form C instead of Verdict Form B. The jury was instructed to use Verdict Form B if it found for plaintiff, that plaintiff's injury was caused by a combination of defendants' negligence and plaintiff's contributory negligence, and that plaintiff's contributory negligence was less than 50%. It was instructed to use Verdict Form C if it found in favor of defendants or if it found that plaintiff's contributory negligence was greater than 50%. Thus, both Verdict Form B and Verdict Form C are consistent with a jury finding of contributory negligence; the determination of which form to use simply depended on the jury's determination of the level of plaintiff's contributory negligence. Accordingly, the jury's use of Verdict Form C does not preclude the possibility that the jury found plaintiff to be more than 50% contributorily negligent.

¶ 60     We conclude that the two-issue rule applies in this case and that because plaintiff has failed to offer any arguments that findings in favor of defendants on the other defenses presented to the jury would be against the manifest weight of the evidence, we cannot reverse the judgment based on plaintiff's contention that the trial court erred in instructing the jury on the informed judgment defense. See *Strino*, 365 Ill. App. 3d at 905 (alleged error in instructing jury on

contributory negligence did not warrant reversal where, under the two-issue rule, the jury could have reached its verdict based on the defense that defendants were not negligent).

¶ 61        Because plaintiff makes no arguments whatsoever that the jury's verdict could not be sustained on the other defenses defendants presented to the jury,[5] we are not required to assess the sufficiency of the evidence on those defenses.[6]  Nevertheless, even a cursory review reveals that findings in favor of defendants on these defenses would not be against the manifest weight of the evidence.  "A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary and not based upon any of the evidence." *Lazenby*, 236 Ill. 2d at 101 (internal quotation marks omitted).

¶ 62        Defendants first argued that even if one did not consider the informed judgment defense, Rucker's opinion that the handles were not included within the scope of the preliminary determination because they were excluded under the finished merchandise exclusion did not violate the general standard that an attorney must act with reasonable care and skill.  The record contains sufficient evidence from which the jury could have reached a conclusion agreeing with this contention.  Mowry testified that Rucker's conclusion that the handles were finished merchandise that fell within the finished merchandise exclusion was reasonable.  Moreover, the

---

[5] It is unclear to us why plaintiff's counsel on appeal makes no attempt to address the sufficiency of the evidence on defendants' other defenses as an alternative to its argument that the two-issue rule did not apply.  Certainly, the failure to do so seems like a risky strategy, given that plaintiff must have been aware that the two-issue rule would likely be raised by defendants on appeal and that the trial court had already found against it on the two-issue rule.

[6] We note that, in response to defendants' argument that any error in the jury instructions was harmless because they were entitled to a directed verdict on multiple grounds including causation, plaintiff argues that a directed verdict based on causation would be inappropriate because it presented some evidence that defendants caused plaintiff's alleged injury.  However, the question of whether plaintiff presented sufficient evidence to survive a directed verdict, which requires only that plaintiff present *some* evidence on each element of the claim (*Hemminger v. LeMay*, 2014 IL App (3d) 120392, ¶ 29) has no impact on the question of whether a jury finding was against the manifest weight of the evidence.

finished merchandise exclusion applied to "finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry." The jury could have found that because the handles were complete handles at the time of importation—to the point that they could be, and actually were in some instances, sold individually—Rucker's conclusion was not unreasonable.

¶ 63     We recognize that some of the language used by Rucker is arguably overly definite in the context of import duties, which can best be described as fluid. For instance, in an email shortly after Rucker issued his initial opinion, he stated that "[a] comparison of the handles' physical properties and manufacturing processes against the scope language *does raise a question whether such articles are covered*," but that he "*concluded*" that the handles were not within the scope of the preliminary determination. He then advised Whirlpool that it was "good to go" to import handles without flagging them for AD/CV duties. Although one could reasonably argue that this language was overly definite, conveyed to plaintiff a sense of certainty that was perhaps undue, and not the best practice, the very deferential standard of review requires us to conclude that a jury's finding to the contrary is not so unreasonable, arbitrary, or contrary to the evidence that it would be against the manifest weight of the evidence. The jury could have found that Rucker was not unreasonably certain because he advised plaintiff that there was a question of whether the handles were covered by the language of the preliminary determination, it was *his* conclusion that the handles were excluded, and plaintiff was a sophisticated importer that knew a binding determination could only be made by Commerce.

¶ 64     With respect to causation, defendants argued that plaintiff failed to present any competent evidence of what it would have done in 2010 if Rucker had indicated less certainty in his conclusion that the handles were outside the scope of the preliminary determination or even if

Rucker had told plaintiff that the handles were definitively within the scope of the preliminary determination. A finding by the jury that plaintiff failed to establish what it would have done in 2010 would not have been against the manifest weight of the evidence. Although it is true that plaintiff re-sourced the handles in 2012 after Customs flagged them, that fact did not necessitate a conclusion by the jury that plaintiff would have done the same in 2010, as the evidence was that plaintiff faced a 407% duty deposit in 2012, but there was no such evidence that the same would have applied in 2010. In fact, there was no evidence of what rates would have applied to the imported handles in 2010. Moreover, the evidence demonstrated that the decision of whether to re-source the handles belonged to plaintiff's procurement department, yet no one who worked in the procurement department in 2010 testified. Maurer testified that although he recommended re-sourcing in 2012 after Customs flagged the handles, he had no idea what plaintiff would have done in 2010 if it had known or thought it possible the AD/CV duties would apply to the imported handles. Daugherty initially testified that plaintiff would have re-sourced the handles in 2010, but she did not work in the procurement department and was later impeached with her deposition testimony that she did not know what plaintiff would have done in 2010 if Rucker had advised plaintiff differently. Based on this, we cannot say that a jury finding that plaintiff failed to prove that defendants' allegedly negligent advice caused it to forego re-sourcing the handles from China in 2010 is against the manifest weight of the evidence.

¶ 65    Likewise, a finding by the jury that plaintiff was more than 50% contributorily negligent is not against the manifest weight of the evidence. Defendants presented evidence that plaintiff, through its employees, knew that any opinion rendered by defendants was not a guarantee and that a final determination could only be obtained through a scope ruling from Commerce, yet plaintiff made no effort to seek a scope review once the final determination and orders were

issued in 2011. Moreover, defendants presented evidence that plaintiff failed to follow its own procedure for resolving uncertainty in whether AD/CV duties applied to a particular product not only by failing to seek a scope review, but also when Daugherty, one of plaintiff's licensed customs brokers, did not read or provide an interpretation of the preliminary determination and when no one sought assistance from plaintiff's internal government affairs personnel. It would not have been against the manifest weight of the evidence for the jury to conclude, based on this evidence, that plaintiff was more than 50% contributorily negligent.

¶ 66    Plaintiff also argues on appeal that the trial court erred in granting summary judgment in favor of defendants on certain elements of plaintiff's claimed damages and in not allowing Dunn to testify that Rucker's advice was incorrect based on the shapes and forms language of the preliminary determination. We need not address these issues, however. Like plaintiff's contention regarding the informed judgment jury instruction, even if plaintiff is correct that the trial court's actions constituted error, they would not have affected the outcome of the trial because the jury's verdict can be sustained on the unrelated grounds of general negligence, causation, and plaintiff's contributory negligence.

¶ 67    In sum, we conclude that because the jury returned a general verdict, no special interrogatories were submitted that tested the basis of the jury's verdict, defendants presented multiple defenses, and plaintiff does not contest the sufficiency of the evidence on those defenses, under the two-issue rule, reversal is not warranted, even if plaintiff's claims of error have merit.

¶ 68                                    CONCLUSION

¶ 69    For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

¶ 70    Affirmed.